NATIONAL SURETY CO. v. AROSIN et al.

(Circuit Court of Appeals, Eighth Circuit. July 8, 1912.)

No. 2,849.

**1.** COUNTIES (§ 99*)—SUBROGATION (§ 7*)—DEPUTY AUDITOR—"MISCONDUCT IN OFFICE"—LIABILITY ON OFFICIAL BOND.

A deputy county auditor in Minnesota, authorized by law to act in the name of his principal and for whose official acts the auditor and his bondsmen were responsible, not only to the county, but to any person injured by his "misconduct in office" (Gen. St. Minn. 1894, §§ 710, 5951), issued spurious refund orders on the county treasurer in favor of fictitious payees, purporting to be for the refunding of invalid tax sale certificates. He procured the orders to be authenticated by the chairman of the county board, and they were presented to the county treasurer, who indorsed thereon that there were no funds available, but that they would be paid with 7 per cent. interest when there was money in the treasury for the purpose. Such deputy forged the names of the fictitious payees to assignments and sold the orders to a state savings bank, to which they were paid by the treasurer with interest a year later. The deputy auditor bore a good reputation, and his integrity had never previously been questioned. The bank was expressly authorized by statute to invest funds in such orders, and had done so before in the usual course of business. On discovering the forgeries, the county brought suit on the auditor's bond and recovered a judgment which was paid by the surety, which then brought suit against the bank. *Held* that, although the orders were not negotiable, the bank was not chargeable with any negligence in their purchase, but that the loss was one caused by the "misconduct in office" of the deputy auditor for which the surety was liable, and that it could not recover over against the bank.

[Ed. Note.—For other cases, see Counties, Cent. Dig. §§ 144-146, 148; Dec. Dig. § 99;* Subrogation, Cent. Dig. §§ 17, 18, 21-23, 25-28; Dec. Dig. § 7.*

For other definitions, see Words and Phrases, vol. 5, pp. 4532, 4533.]

**2.** SUBROGATION (§ 7*)—AUDITOR—LIABILITY ON BOND.

The same deputy auditor also made certain false redemption warrants to fictitious payees, forged indorsements on the same and presented them to the county treasurer who paid them, either in cash or by checks on a bank which paid the checks on the forged indorsements of the payees' names by the deputy. *Held*, that the primary cause of the loss was the official misconduct of the deputy in making the warrants for which the auditor's surety was liable, and that it could not recover over against either the treasurer or the bank.

[Ed. Note.—For other cases, see Subrogation, Cent. Dig. §§ 17, 18, 21-23, 25-28; Dec. Dig. § 7.*]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Appeal from the Circuit Court of the United States for the District of Minnesota.

Suit in equity by the National Surety Company against Otto H. Arosin and others. Decree for defendants, except defendant W. R. Johnson, and complainant appeals. Affirmed.

Edmund S. Durment (Albert R. Moore, on the brief), for appellant.

Edward P. Sanborn, for appellees National German-American Bank and Arosin.

John D. O'Brien (Dillon J. O'Brien, on the brief), for appellee State Savings Bank.

Harris Richardson, for appellee United States Fidelity & Guaranty Co.

Before ADAMS and SMITH, Circuit Judges, and WILLARD, District Judge.

WILLARD, District Judge. This case has been here before. The defendant and appellee the State Savings Bank demurred to the bill. The demurrer was sustained. Judgment was entered dismissing the bill as to the State Savings Bank. The plaintiff and appellant, the National Surety Company, appealed to this court. The judgment was reversed. National Surety Co. v. State Savings Bank, 156 Fed. 21, 84 C. C. A. 187, 14 L. R. A. (N. S.) 155, 13 Ann. Cas. 421. After the case had been remanded, the defendants answered. The case was tried by Judge Lochren upon the admissions in the pleadings and upon an agreed statement of facts. Judgment was rendered in favor of all of the defendants except Johnson, and the plaintiff has again appealed.

[1] 1. So far as the State Savings Bank is concerned it is not necessary to restate the facts which appear in the report of the former appeal.

Upon that appeal the court, after referring to section 5951, Gen. St. Minn. 1894, which provides that the bond of the county auditor shall stand as security for any person injured by his official delinquency, and to section 710 of the same statutes, which gives an action to any person injured by misconduct in office of the auditor, said:

"Accordingly, if the bank had been injured by reason of its purchase of the orders from Bourne, and that injury had been occasioned by Bourne's official delinquency or misconduct in office, it might have recovered its loss from the Surety Company. If, by virtue of these statutes, the bank could have recovered from the Surety Company, as a matter of course the Surety Company cannot now recover from the bank. We are therefore to inquire whether, if the bank had failed to secure payment of its refunding orders from the county treasurer, its loss or injury would have been so produced by the misconduct in office of Deputy Auditor Bourne as to subject the surety of the auditor to liability for it."

After considering this question the court held that the Surety Company would not be liable. The court so held because it was of opinion that the negligence of the bank prevented a recovery. That this is so plainly appears from the opinion.

At page 24 of 156 Fed., at page 190 of 84 C. C. A., 14 L. R. A. (N. S.) 155, 13 Ann. Cas. 421, it is said:

"On the contrary, the nonnegotiability of the orders, and possibly the intervention and activity of Bourne, as shown by the bill, should have attracted the attention of the bank and warned it against purchasing the orders without making diligent inquiry concerning their validity."

And again at page 25 of 156 Fed., at page 191 of 84 C. C. A., 14 L. R. A. (N. S.) 155, 13 Ann. Cas. 421:

"Right here is the radical and decisive difference between the position of the county and that of the bank. While the payment by the county was, in the ordinary course of business, reasonable and probable, the purchase of the orders by the bank on the assignments made in the name of myths by Bourne was not the natural or probable consequence of their issue. No one could have reasonably anticipated that a bank or any rational person would disregard the law which makes a nonnegotiable chose in action in the hands of an assignee subject to every defense existing in favor of the maker against the assignor, purchase a nonnegotiable order of the kind in question, and pay the purchase price thereof to one who was not the payee named therein, without inquiring into the genuineness of the assignment and the genuineness of its execution. Such a purchase would be out of the ordinary course of business, unnatural, improbable, incapable of anticipation, and in no legal sense the natural and probable consequence of the issue of the orders."

And again on the same page:

"Taking an assignment of nonnegotiable security, it was bound to inquire, not only whether all steps had been taken to create a legal liability against the county, but also as to the genuineness of the assignment of the right of the original payees. If such inquiry had been made at the places and of the officers plainly suggested on the face of the securities themselves, the bank would have unquestionably learned the fact that they were bogus and fraudulent, and saved itself from any possible loss. In such circumstances failure to make inquiry was culpable negligence."

And again at page 28 of 156 Fed., at page 194 of 84 C. C. A., 14 L. R. A. (N. S.) 155, 13 Ann. Cas. 421:

"The bank may not have been morally culpable; but its failure to discharge the duty of making inquiries suggested by the nonnegotiable character of the orders which it purchased, and by other circumstances attending the transaction, was an act of omission equally as effective to occasion injury to the county as many affirmative acts of commission could have been. Such inquiry at the auditor's or treasurer's office would have quickly disclosed that the payees were entitled to nothing, that they were myths, and that misrepresentation, fraud, and forgery were being practiced upon the county. Ignorance in fact occasioned by indulging indifference to almost obvious danger and negligence of the grossest sort is entitled to little consideration by a court of conscience. The bank's negligence operated as effectually to defraud the county as any willful or intentional participation in the fraudulent scheme could have done."

If nothing more appeared upon this appeal than appeared upon the former appeal, this judgment would have to be reversed. But more does appear. The only allegations in the bill relating to the State Savings Bank were to the effect that Bourne having made these documents and having written thereon a transfer thereof to the bank and having signed such transfer with the name of the fictitious payee delivered the papers to the bank and received from it its check for $7,352.49. There was nothing to show that this

bank had ever bought one of these orders before. There was nothing to show that any one else had ever bought one before. There was nothing to show that the bank had ever seen one before. There was nothing to show that the transaction was had in the usual course of business.

But it now appears, in the agreed statement of facts, that:

"For many years before said purchase by said Savings Bank said system of issuing refunding orders had been in operation in said Ramsey county, and they had been frequently bought and sold and transferred as in this case, and the said State Savings Bank had upon several other occasions purchased such refunding orders in the same way, and that no question had ever been made by anybody as to the validity of said orders or the method of purchasing them, and all of such refunding orders issued prior to the one hereinbefore admitted to be unauthorized were in fact authorized and valid."

It also now appears that at the time the Savings Bank bought these orders Bourne was of good reputation in the community where he lived and in St. Paul, Minn., trusted, and believed to be honest.

So skillfully was the work of Bourne done, and so strong was the belief in his honesty, that these papers and all the fraudulent papers involved in this case were, after they had been paid by the county treasurer, credited to him, and his accounts which included these papers and payments were audited by the board of auditors of Ramsey county at the times and in the manner provided by statute without the fraud being discovered. This fact appears for the first time upon this appeal.

It will have been noticed that the court upon the former appeal laid great stress upon the fact that no inquiry was made by the Savings Bank at the auditor's or treasurer's office before its purchase of the documents. It now appears, however, in the agreed statement of facts and for the first time, that these orders were prior to the purchase by the Savings Bank presented to the county treasurer who then and there indorsed them as follows:

"St. Paul, Minn., Apr. 12, 1899.

"No funds to the credit of this account. Will be paid as soon as there is money in the treasury, for that purpose, with interest at the rate of 7% from date of this indorsement.    O. H. Arosin, Co., Treas.,

"Per. H. Mayer, Cashier."

It is true that it does not affirmatively appear that the Savings Bank took the papers to the treasurer's office. Nor does it appear that it did not. But it is immaterial who took them there. The information contained on the indorsement was all the information which the bank could have obtained if one of its officers had himself presented the papers to the treasurer.

As the case now appears, there was nothing in the transaction to excite the suspicion of the bank. It purchased these orders as it and others had purchased them before. Bourne was a man of good character. It is entirely consistent with the facts agreed upon to infer that some of the valid orders theretofore purchased by the Savings Bank had been purchased from Bourne himself. The law of Minnesota expressly authorized the Savings Bank to pur-

chase such documents. They not only bore the genuine signature of the auditor and of the chairman of the county commissioners, but they had stamped on them the positive promise of the county treasurer to pay the orders when the treasury was in funds. The signature of the treasurer to this promise was genuine.

Upon the case now presented we agree with the court below that there was no negligence on the part of the Savings Bank and that the plaintiff is not entitled to recover as against it.

[2] 2. The case as to the other defendants and appellees is this: Bourne made certain false redemption warrants in much the same way that he manufactured the refunding orders. The names inserted in these warrants were with two exceptions fictitious. He wrote the names of the fictitious persons on the backs of the warrants, presented them to the county treasurer, Arosin, defendant and appellee, who paid them. This payment was sometimes made by the treasurer in cash, but more frequently by check to the order of the fictitious person on the defendant and appellee the National German-American Bank which was a depository of the county funds. When the payment was made by check, Bourne indorsed the name of the fictitious payee thereon and collected the check, sometimes by presenting it directly to the National German-American Bank, but more frequently by presenting it to some other bank. In all cases, however, the National German-American Bank eventually paid the checks and charged the amount thereof to the county.

The plaintiff seeks to hold the defendant Arosin and the defendant and appellee the United States Fidelity & Guaranty Company surety on Arosin's official bond, on the ground that the law required the treasurer to pay only by check and that when he made some payments to Bourne in cash over the counter he violated this law.

It seeks to hold the National German-American Bank on the ground that it wrongfully paid out money of the county on forged indorsements.

The same rule, however, must be applied to these three defendants as was applied to the State Savings Bank. The primary cause of the loss was the manufacture by Bourne of the false warrants and orders. For his official misconduct the plaintiff was liable. The evidence does not show any negligence on the part either of Arosin or of the National German-American Bank. There can be therefore no recovery against either of them.

The decree of the court below is affirmed, with costs.