## AMERICAN BONDING CO., APPELLANT, *v.* STATE SAVINGS BANK, RESPONDENT.

### (No. 3,251.)

(Submitted April 17, 1913.   Decided May 7, 1913.)

[133 Pac. 367.]

*Public Officers— Suretyship— Liability— Actions— Subrogation —Complaint—Insufficiency—Equity—Status of Party Holding Legal Title.*

Equity—Subrogation—Nature of Remedy.
1.   The doctrine of subrogation is invoked by courts of equity to the end that justice may be done as nearly as possible, its application depending upon the circumstances of each particular case.

Public Officers—Suretyship—Liability—Subrogation.
2.   Where a surety company had to make good a county's loss occasioned by the misconduct of one of its officers in issuing fictitious jurors' certificates, which had been purchased by a bank and paid by the county, it was incumbent upon the company to show in its complaint, in order to entitle it to subrogation to the right of action which the county had against the bank for the recovery of the money paid under a mistake as to its liability, that, as between it and the bank, in equity and good conscience the latter should bear the loss.

Same—Complaint—Insufficiency.
3.   *Held,* under the above rule, that the complaint which did not charge negligence or wrongdoing on the part of the bank in purchasing the fraudulent certificates, but rather disclosed that it acted in good faith in the premises and followed an established custom in dealing in them, even though they did not bear the impress of the official seal as required by law, failed to show such a state of facts as to entitle the surety company to be subrogated to the right of the county to recover the money paid to the bank.

Same—Equities Balanced—Status of Party Holding Legal Title.
4.   Where the equities of the parties are evenly balanced, the position of the one who has the legal title to the thing in controversy is the better.

Same—Suretyship—Liability—Subrogation—Rights of Parties.
5.   *Semble:* It would seem that a bank which cashed fraudulent county certificates would, in the event the county had refused to pay them, have had a right of action against the surety company which for a consideration undertook to be responsible for the official misconduct of the person issuing the same; therefore, the company may not be said to have had a cause of action against the bank to recover what it was obliged to pay.

*Appeal from District Court, Silver Bow County; John ´B. McClernan, Judge.*

ACTION by the American Bonding Company of Baltimore against the State Savings Bank.   Judgment for defendant. Plaintiff appeals.   Affirmed.

*Messrs. Walsh, Nolan & Scallon,* for Appellant, submitted a brief; *Mr. Wm. Scallon* argued the cause orally.

The certificates upon which the money was drawn by the respondent were issued in the form prescribed by section 3179 of the Revised Codes. This court held in *In re Farrell,* 36 Mont. 254, 92 Pac. 785, that they were utterly void. Not only were they a nullity, but the indorsement of the payee on each was a forgery, if forgery could have been predicated of them.

The respondent had, accordingly, no just claim against the county. The instruments upon which it secured the money were in no sense negotiable, were supported by no consideration, and no title to anything passed by their transfer with or without indorsement. The county could, unquestionably, had it seen fit to do so, have recovered from the bank every dollar paid to it upon the certificates, in an action for money paid by mistake. (3 Randolph on Commercial Paper, 1486.) And no negligence on the part of the treasurer in making the payment would bar the right. (*Hathaway* v. *County of Delaware,* 185 N. Y. 368, 113 Am. St. Rep. 909, 13 L. R. A. (n. s.) 273, 78 N. E. 153.) Nor, obviously, would fraud or collusion of the treasurer in making the payment. Upon principles thoroughly established, the treasurer, had he been called upon to pay the county, would have been subrogated to its right to proceed against the bank. Indeed, he could have proceeded directly against it, though no steps at all had been taken to require him to restore the amount to the county. The authorities chose to proceed against the clerk and his sureties, but obviously the parties who actually got the money out of the treasury without any just right to it, are the ones who may be said to be primarily liable for the return of it, and the surety paying is unquestionably subrogated. The case of *National Surety Co.* v. *State Savings Bank,* 156 Fed. 21, 13 Ann. Cas. 421, 14 L. R. A. (n. s.) 155, 84 C. C. A. 187, is directly in point. In that case the orders were apparently genuine, and the court held that their payment by the county was reasonably to be anticipated, and though the warrants in this case

carried on their face evidence of their invalidity, wanting, as they did, the seal of the county, this court held that the payment of them was a consequence reasonably to be apprehended from Farrell's acts as issuing them, and that consequently his principal and the surety of the latter, the appellant here, were responsible for its acts in that regard. The whole subject is exhaustively considered by the court, and the conclusion at which it arrived fully justified upon reason and authority. The learned judge writing the opinion insists that had the county assigned to the surety its right to recover of the bank, no doubt could arise as to the right of the former to maintain an action against the latter for reimbursement. The case came before the court, as does this action, upon a judgment entered on a demurrer to the complaint. It was sent back for trial and came again before the appellate court for review. A judgment for the defendants was again rendered in consequence of facts shown at the trial constituting, as the court held, an affirmative defense. The judgment so entered was affirmed, the principles upon which the case was decided in the first instance, as set out in the opinion above referred to at length, being adhered to. (*National Surety Co.* v. *Arosin*, 198 Fed. 605, 117 C. C. A. 313.) The orders considered in all litigation reported in the cases cited were complete on their face, fair and regular. It was held that, under the conditions shown, the bank was not guilty of any negligence in purchasing them. Some such facts as controlled the court in its final disposition of the case may eventually be made to appear in this action, but the essential difference will remain that the warrants in question here were void on their face for want of a seal. As the case now stands, it does not appear that the respondent used any diligence at all, for the purpose of ascertaining the genuineness or regularity of the warrants, and, it must be presumed that, if any diligence had been used, the irregularities in the issuance of these papers and their illegality would have been discovered, and, of course, the fact of the absence of the seal would have been noticed.

*Mr. W. D. Kyle, Mr. Frank C. Walker,* and *Mr. Charles R. Leonard,* for Respondent, submitted a brief; *Mr. Kyle* argued the cause orally.

Negligence or misconduct on the part of defendant is not shown in complaint, which, therefore, is insufficient to show liability of defendant to plaintiff. The theory of the plaintiff apparently is that the bank, having been paid money on certificates which were worthless, thereby became liable to the plaintiff upon its having paid the amount thereof to the county of Silver Bow, under the doctrine that by the payment of said money it was subrogated to the rights of the county against the bank. The facts pleaded in the complaint, we insist, do not warrant any such contention. The respondent denies that the relative positions as between it and the county of Silver Bow and the appellant are the same. The county is not liable to the bank for the misconduct of deputy Farrell, whereas the plaintiff expressly obligated and bound itself to indemnify not only the county but any other party against loss caused by the act of its principal or any of his deputies. (*Sievers* v. *San Francisco,* 115 Cal. 648, 56 Am. St. Rep. 153, 47 Pac. 687; secs. 384, 398, Rev. Codes.) The complaint shows that by a uniform custom and practice, juror and witness certificates had at all times been issued without being under seal. The existence of such a custom and practice, we submit, absolved defendant bank from the duty of only treating juror certificates which were under seal as valid and binding obligations of the county, and that it was justified in recognizing such certificates not under the seal of the county as just and valid and binding obligations, and that in so acting with reference to such certificates it cannot be charged with any negligence. While we recognize it to be the law that a custom or usage cannot prevail as against a rule of law, we do insist that parties in the course of dealings with each other can establish a usage or custom affecting their rights which will be recognized by the courts even though it conflict with some fixed principle of law. "Usages are sustained where they relate to modes of action, a particular course of dealing, or a peculiar

method of transacting business, although they do, in fact, affect the legal rights of the parties; but not where they amount to the adoption of a peculiar or local rule of law, contrary to the terms of the contract, or to a general rule of law applicable to its construction." (*Dickinson* v. *Gay,* 7 Allen (Mass.), 29, 83 Am. Dec. 656.) "Custom known and acquiesced in by the parties will excuse the nonperformance of a duty prescribed by law." (*Governor* v. *Withers,* 5 Gratt. (Va.) 24, 50 Am. Dec. 95.) "A local custom which relates simply to the mode of the performance of a contract or to its interpretation, if established and known to the parties, may be enforced." (*Geyser etc. Co.* v. *Stark,* 106 Fed. 558, 564, 53 L. R. A. 684, 45 C. C. A. 467, 21 Morr. Min. Rep. 220; see, also, 29 Am. & Eng. Ency. of Law, 2d ed., 380.)

The complaint fails to show that plaintiff has no other remedy than subrogation, and is therefore insufficient. It fails to state whether or not Davies, principal in the bond on which the plaintiff was surety, is financially able to reimburse it for its loss, or whether or not the plaintiff has any security in respect to such loss. Without such allegations we submit the complaint is insufficient to state facts authorizing the granting of any relief to the plaintiff as against the defendant. (6 Pomeroy's Equity Jurisprudence, 3d ed., sec. 923; *Pierson* v. *Borough of Haddonfield,* 66 N. J. Eq. 180, 57 Atl 471.)

MR. JUSTICE HOLLOWAY delivered the opinion of the court.

From the first Monday of January, 1905, to the first Monday in January, 1909, W. E. Davies was the duly elected, qualified and acting clerk of the district court of Silver Bow county. During a portion of that period W. P. Farrell was his chief deputy. The American Bonding Company of Baltimore was the surety on Davies' official bond. During the time Farrell was acting as deputy clerk he issued false and fictitious jurors' certificates, none of which bore the imprint of the official seal, and these certificates, to the amount of $2,076, came into the possession of the State Savings Bank of Butte and were by it

presented to the county treasurer and paid. The fraudulent character of the certificates having been discovered, the county made demand upon the clerk of the district court and the bonding company, his surety, to repay the amounts which the county had paid out on such certificates, and, this demand having been refused, action was commenced by the county and prosecuted to favorable judgment, which judgment was affirmed on appeal by this court. (*County of Silver Bow* v. *Davies et al.*, 40 Mont. 418, 107 Pac. 81.) The bonding company having paid the judgment, which included the amount received by the State Savings Bank, took an assignment of any right of action which the county may have had against the bank, and thereupon commenced this action to recover from the bank the $2,076 which the bank had received from the county upon the fictitious certificates held by it. The complaint sets forth the foregoing facts somewhat more in detail, and concludes by alleging that the bank has not repaid or returned to the county or to the bonding company the $2,076, or any part thereof. To this complaint a demurrer was interposed and sustained, and plaintiff electing to stand upon its complaint, suffered judgment to be entered against it and appealed. The only question presented for our determination is: Does the complaint state a cause of action in favor of the bonding company and against the bank?

The facts concerning Farrell's peculations and the character of the instruments which he issued will be found detailed at length in *In re Farrell*, 36 Mont. 254, 92 Pac. 785, and in *County of Silver Bow* v. *Davies et al.*, referred to in the statement above. Appellant insists that the certificates held by the bank were void, citing *In re Farrell*, above, and therefore the bank had no just claim against the county for their payment; that, having paid the bank the face value of the certificates, the county could have recovered back the money so paid in an action for money paid by mistake. To this extent appellant's contention may be conceded for the purposes of this appeal. It is further insisted that since the county chose to proceed against the district clerk and the surety company,—the surety on his official bond,—to compel them to make good the county's

loss, the surety company, upon paying the amount which the bank had received from the county, thereby became subrogated to the right which the county had to compel the bank to repay the amount which it had received. With this contention we do not agree. Furthermore, it must be conceded that if the bank would have had a cause of action against the bonding company in case the county had refused to pay the fictitious certificates, then the bonding company cannot have a cause of action against the bank in this instance.

1. Assuming that the county of Silver Bow had a cause of action against the bank to recover back the money it paid out on spurious certificates, it does not follow that by paying the county's loss the surety on the clerk's official bond became sub-[1] rogated to the county's right. The doctrine of subrogation had its origin in the civil law. It has been adopted and invoked by the courts of equity in order that justice may be done as nearly as possible. The application of the doctrine must therefore depend upon the circumstances of each particular case. When, therefore, this surety company seeks to be [2] subrogated to the right which the county may have had against the State Savings Bank, it is necessary that something more be made to appear than that the bank could have been made to repay to the county the amount which it received upon the spurious certificates which it held. The surety company must show that as between it and the State Savings Bank, if either must suffer loss because of Farrell's peculations, in equity and good conscience the bank should be the one to lose. This is the rule recognized with practical unanimity. (*American Bonding Co.* v. *Welts,* 193 Fed. 978, 113 C. C. A. 598; *United Fidelity & G. Co.* v. *Title Guaranty & Surety Co.,* 200 Fed. 443.) Does this complaint show such a state of facts? We think not. There is not any charge of negligence or wrongdoing on the [3] part of the bank in purchasing the certificates. So far as the complaint discloses, the bank acted in perfect good faith, and was following a common custom in dealing in these certificates without their bearing the impress of the official seal. Someone must suffer now for Farrell's official miscon-

duct.  Shall it be the bank which acted in good faith and parted with its money for the spurious certificates issued by Farrell, or shall it be the surety company which for a compensation undertook to be responsible for Farrell's official delinquencies not only to the state, and to Silver Bow county, but to this bank as well?  To such an inquiry a court of conscience can make but one answer.  Upon the showing made in its complaint, the surety company has failed to show itself entitled to be subrogated to the right which the county may have had.  (*Stewart* v. *Commonwealth*, 104 Ky. 489, 47 S. W. 332.)  For this reason the complaint does not state a cause of action.

2. According to the allegations of this complaint, the State Savings Bank is in possession of and holds the legal title to the money which it secured from the county upon the fictitious certificates.  At law this surety company would not have any right of action against the bank; but to state a cause of action at all it must allege such facts as will appeal to the conscience [4] of a court of equity.  If the equities of the respective parties are equally balanced, the position of the defendant— the possessor of the thing in controversy—is the better; in other words, the legal title, added to its equity, prevails over an equal equity which has no legal title to support it.  (2 Pomeroy's Equity Jurisprudence, 3d ed., secs. 727, 768; *Fidelity Mut. Life Ins. Co.* v. *Clark*, 203 U. S. 64, 51 L. Ed. 91, 27 Sup. Ct. Rep. 19.)

3. If the county had refused to pay the certificates held by the bank, would the bank have had a cause of action against the surety company for its loss?  The surety company was respon- [5] sible for Farrell's official misconduct (Rev. Codes, sec. 384), to any party injured thereby, and such party could maintain an action for his damages (sec. 398).  That it was Farrell's official misconduct which caused the county's loss has been judicially determined.  (*County of Silver Bow* v. *Davies et al.*, above; *Board of County Commissioners* v. *Sullivan*, 89 Minn. 68, 93 N. W. 1056.)  If the county had refused to pay the certificates, the resulting loss to the bank would have been occasioned by the same acts of official misconduct (*Stewart* v. *Com-*

*monwealth,* above), and it is not any defense that by omitting to stamp the impress of the seal upon the certificates, Farrell avoided punishment or set afloat securities which were invalid. (*County of Silver Bow* v. *Davies et al.,* above.) It would seem to follow as of course that the bank's right of action against the surety company under such circumstances would be absolute.

To sustain their contentions, counsel for appellant rely upon the decision in *National Surety Co.* v. *State Savings Bank,* 156 Fed. 21, 13 Ann. Cas. 421, 14 L. R. A. (n. s.) 155, 84 C. C. A. 187. Bourne, the deputy auditor of Ramsey county, Minnesota, fraudulently issued spurious refunding orders on the county treasurer, procured the chairman of the board of county commissioners to authenticate them, indorsed the names of the fictitious payees, and then sold the orders to the State Savings Bank. The bank presented them for payment and received from the county their face value, with accrued interest. The fraud having been discovered, the county brought action against the auditor and the surety company, the surety on his official bond, and recovered. The surety company, having paid the county, commenced an action against the bank to recover the amount which the bank had collected from the county. A general demurrer to the bill was sustained. The surety company appealed to the circuit court of appeals for the eighth circuit. The majority of the court held that Bourne's personal, as distinguished from his official, misconduct would have been the proximate cause of the bank's loss had the county refused to pay the orders, and therefore the surety on the auditor's official bond could not be held responsible for such personal misconduct. But it was Bourne's official misconduct which called the spurious orders into existence. (*Board of County Commrs.* v. *Sullivan,* above.) If he had issued them to real persons, but to persons not entitled to them, and such persons had negotiated them to the bank, there is not any question that the bonding company would have been liable to the bank for the injury sustained. Now by just what species of legal legerdemain Bourne's forgeries of the indorsements of the fictitious payees, added to his wrongful act in issuing the spurious orders, could

operate to relieve the surety company is beyond our comprehension. It was further held that since the orders were non-negotiable—made so by statute for the very purpose of preventing misuse of them—the bank was guilty of gross negligence in purchasing them without inquiry, and for that reason it could not have recovered from the surety company if the county had refused payment. But, as pointed out in the dissenting opinion of Judge Hook, there was not anything before the court to justify it in assuming the existence of such a state of facts. It was further decided that, since the bank had procured from the county upon these fictitious certificates money to which it was not entitled as against the county, the county might have recovered it back, and since the county proceeded against the surety on the auditor's official bond and enforced payment, the surety company became thereby subrogated to the right which the county might have exercised, to proceed against the bank, and this, too, without any apparent consideration of the relative equities of the respective parties. Upon each of the questions decided, Judge Hook dissented, and in our opinion his position upon each question is unassailable. It is also worthy of note that this case was remanded to the district court for further proceedings; that answer was filed, issues joined, the cause tried, and judgment rendered in favor of the bank on the merits. The surety company again appealed; but this time the same circuit court of appeals—two of the judges being different persons—affirmed the judgment (*National Surety Co.* v. *Arosin et al.*, 198 Fed. 605, 117 C. C. A. 313), and held that the bank was not guilty of negligence in purchasing the orders; and that it was Bourne's official misconduct in manufacturing the orders which was the primary cause of the loss. Nothing is said upon the question of subrogation. In our opinion, there is not any substantial difference in the facts disclosed upon the trial and those appearing upon the face of the bill in the first appeal, and that the decision upon the second appeal ought to be treated as overruling the decision of the majority upon the first appeal. But whether it be so considered or not, we decline to follow

the majority opinion upon the first appeal as unsound, and as opposed to the decided weight of authority.

The complaint does not state a cause of action, and the judgment of the district court is affirmed.

*Affirmed.*

MR. CHIEF JUSTICE BRANTLY and MR. JUSTICE SANNER concur.

Rehearing denied June 28, 1913.