# COOPER, MYERS & COMPANY v. WALTER J. SMITH AND OTHERS.[1]

March 1, 1918.

No. 20,697.

**Action against officer and his surety by purchasers of forged school warrant — notice of defects — complaint defective.**

The state treasurer caused to be abstracted from the office of the state auditor a warrant drawn by the auditor on the treasurer in favor of a school district for a loan and caused the indorsement of the treasurer of the school district to be forged thereon. He then sold and delivered the warrant to the plaintiff, assuming to represent the school treasurer, and received checks payable to himself. The plaintiff indorsed the warrant and deposited it in its bank and the bank indorsed it and delivered it to another bank which received payment from the state treasury. Some months later the fraud and forgery and misappropriation were discovered, and the plaintiff, on pressure from state officials in which the official sureties of the treasurer participated, paid to the state what it received on the warrant with interest. In an action by the plaintiff to recover of the sureties it is *held*:

(1) That the sureties were liable to the state for the treasurer's defalcation; that the plaintiff was liable to restore to the state the money of the state which it received on the stolen warrant though free of fault or negligence; that as between the sureties which contracted against the wrongful conduct of the treasurer in office, and the plaintiff purchasing the warrant in good faith and without notice or negligence and suffering from his official misconduct, the sureties should bear the loss; and that the plaintiff, having refunded to the state what it received, may recover of the sureties if it purchased the warrant in good faith and without notice or negligence.

(2) That upon the facts stated and upon the issue between the plaintiff and the sureties the acts of misappropriation of the treasurer resulting in loss to the plaintiff and liability on its part to the state must be considered official, and as parts of one plan of misappropriation; and that the plaintiff having paid to the state the sureties cannot escape liability to reimburse it upon the theory that the acts of the treasurer in

[1]Reported in 166 N. W. 504.

abstracting, forging and negotiating the warrant, and all acts which preceded payment, were personal and unofficial and separable from the final act of payment, and therefore that they are not liable to reimburse it though liable to the state before the plaintiff paid and though the payment by the plaintiff relieved them of such liability and though the act of payment was what involved both the sureties and the plaintiff in liability to the state.

(3) That in view of the facts recited and others stated in the opinion the complaint does not show that the plaintiff was without notice of defects in the warrant and free of negligence, though it contains an allegation that it purchased in due course and without notice.

Action in the district court for St. Louis county against Walter J. Smith, and the sureties on his official bond, to recover $18,509. The United States Fidelity & Guaranty Company and Globe Indemnity Company demurred to the complaint, and the court, Cant, J., overruled the demurrers and certified that the question presented by each of the demurrers was important and doubtful. From the order overruling the demurrers, the defendants demurring appealed. Reversed on the point stated in the last paragraph of the opinion.

*Cray & Eaton,* for appellants.

The complaint failed to state a cause of action because:

(1) Immediately the state was paid, the claim was extinguished and there was nothing to subrogate.

(2) The doctrine of subrogation cannot be invoked in behalf of one situated as plaintiff was in this case, even assuming there was nothing irregular in the first transaction. The plaintiff, as far as the payment of the $18,000 was concerned, was a mere voluntary stranger; hence he cannot recover under the rule that when one pays the debt of another, which he is then under no obligation to pay and does not by paying preserve and protect some interest in his own property, he is a mere volunteer and not within the equity of subrogation. Stearns, Suretyship, 467; Gadsden v. Brown, Spears, Eq. (S. C.) 37; Suppiger v. Garrels, 20 Ill. App. 629; Mavity v. Stover, 68 Neb. 602, 94 N. W. 834. This court is in absolute accord with this rule. Wentworth v. Tubbs, 53 Minn. 388, 55 N. W. 543. At the time plaintiff made the payment

of Smith's debt to the state, it was under no legal obligation to pay the debt and was therefore a volunteer under the rule. The complaint alleged that at the time plaintiff made the payment it contended it was not liable because it cashed the warrant. It claims it paid what it believed it was under no liability to pay. If there was anything that could be more effective in binding it absolutely by the volunteer rule, it was this allegation in the complaint by which plaintiff is bound. Under the terms of his bond to the state defendant Smith is the principal and these defendants are sureties. When defendant Smith by himself or another has paid to the state its moneys, all the claims are extinguished and there is consequently no obligation under the bond.

Through its treasurer plaintiff is charged with the knowledge that Smith could have no such legal control of the warrant as would authorize him to negotiate it or plaintiff to purchase it. The name of the treasurer of the school district on the back of the warrant, with Smith's statement, was notice to him that Smith could have no title to the warrant. It was not drawn on a Duluth bank when it was negotiated, but on the very person officially in whose possession it was.

(3) Plaintiff's own negligent act was the cause of its loss, and it is barred in this action because it has violated the equitable doctrine that he who comes into equity must come with clean hands. It went outside the scope of legal and ordinary banking when it purchased this warrant. See National Surety Co. v. Arosin, 198 Fed. at page 607. Our state and Federal courts have adhered to the rule that in cases similar to this there can be no subrogation. Prairie State Bank v. U. S. 164 U. S. 227, 17 Sup. Ct. 142, 41 L. ed. 412.

(4) Any action in respect to this transaction is barred by G. S. 1913, § 6998, subd. 2.

*Fryberger, Fulton & Spear,* for respondent.

1. Plaintiff was subrogated to the rights of the state the moment it paid the latter the $18,000 and this is true whether it was actually liable or not, so long as there was a colorable claim that it was liable. The complaint alleged that the payment was made in the full belief that plaintiff was liable and on the representations of the officials and agents who were acting on behalf of the state and of defendant corporations,

with full authority so to act, and in the full belief that plaintiff would be subrogated to any and all rights that the state had as against these defendants on said bond or otherwise. With these allegations admitted to be true, can any one seriously contend that plaintiff was a volunteer?

2. Plaintiff was actually liable to the state and on payment of the claim was subrogated to its rights against the bonding companies. The doctrine of subrogation really means an equitable assignment. The modern doctrine of subrogation, as applied to the facts in this case, probably is as well stated in Emmert v. Thompson, 49 Minn. 386, 52 N. W. 31, 32 Am. St. 566, as will be found stated anywhere in a Minnesota case. Is there any doubt as to who ought to stand the stealing of Smith—plaintiff company, which according to the complaint is entirely innocent and paid its money in good faith, or these bonding companies which for a very large premium signed a bond and guaranteed to the world that Smith was honest and would not steal the money from the state? The equities are so clear in favor of plaintiff that the question is not open to argument.

Section 6998, subd. 2, is a part of the statute of frauds. That deals with contracts only. The doctrine of subrogation is not founded on contract.

PER CURIAM.

This action is brought by Cooper, Myers & Company, a corporation, against Walter J. Smith, former state treasurer, and the sureties on his official bond. The sureties demurred to the complaint and appeal from the order overruling their demurrer.

1. On May 29, 1915, the defendant, Smith, then state treasurer, caused to be abstracted from the office of the state auditor a warrant for $18,000, drawn by the state auditor on the state treasurer in favor of a school district in Aitkin county for a loan, but not delivered, and caused the indorsement of the treasurer of the school district to be forged thereon. He then took it to Duluth, where the plaintiff did business, and received for it the plaintiff's checks for its face amount and they were paid in due course. The plantiff indorsed the warrant and deposited it in the City National Bank of Duluth, which indorsed it and sent it to the Merchants National Bank of St. Paul, which

received payment from the state treasury. The taking of the warrant and the forgery and the misappropriation were not discovered until the beginning of February, 1916. It was suggested by counsel for appellant on the argument that the termination in favor of the school district of certain litigation by way of injunction, which had prevented the use of the warrant before, rendered its use in the immediate future possible, and was the occasion of the discovery. See Evens v. Anderson, 132 Minn. 59, 155 N. W. 1040. Then upon pressure by the state officials, in which the sureties participated, the plaintiff paid the state the amount of the warrant, with interest, thereby rendering it whole upon Smith's defalcation and relieving the sureties of direct liability to it.

Under the facts stated the defendant surety companies were liable to the state on the official bond of the treasurer. Such was their contract. On well understood principles the plaintiff which got the state's money through a stolen instrument and through the aid of a forged indorsement, though innocent of actual wrong or of any fault or negligence, was bound to restore in the absence of any fact equitably preventing such result and none such is present. The question is whether being liable to restore and having done so its position is so much better than that of Smith's sureties that it may recover of them what concededly the state might have recovered. The question is this: In equity and good conscience should the plaintiff who innocently received the state's money through the fraud and defalcation of Smith and parted with an equivalent amount of his own, or the sureties who for a consideration contracted that Smith would be officially faithful, bear the loss? We feel no great hesitancy in holding that the loss should be that of the sureties.

A discussion of the principles applicable is not necessary. No case directly in point is cited. In National Surety Co. v. Arosin, 198 Fed. 605, 117 C. C. A. 313, it was held that a surety which paid to a county the amount of the defalcation of one of its officers, effected through spurious orders which were sold to a bank which purchased innocently and without notice, could not recover of the bank though the county might have done so. There the holding was that the position of the surety which paid was not better than that of the bank. Our holding is that the position of a bank paying under such circumstances is better than that of the surety. In principle, American Bonding Co.

v. State Sav. Bank, 47 Mont. 332, and Stewart v. Commonwealth, 104 Ky. 489, are similar to the case just cited; but, as stated, none of them reached the point which we are required to decide. We are content to hold that as between sureties contracting against official misconduct and those suffering from it, the latter, paying an obligation resting upon the sureties as well, are superior in right.

2. The appellants cite National Surety Co. v. State Savings Bank, 156 Fed. 21, 84 C. C. A. 187, 14 L.R.A.(N.S.) 155, 13 Ann. Cas. 421. This is the same case, on the first appeal, as National Surety Co. v. Arosin, 198 Fed. 605, 117 C. C. A. 313. On the authority of this case they contend, and their argument is not without force, that the misconduct of Smith was not official, at least so far as concerns the plaintiff, so as to render his sureties liable to the plaintiff for the amount it was required to pay though in so paying it relieved them. If Smith had done nothing more than abstract the warrant from the auditor's office and forge the signature of the school treasurer, and sell it to the plaintiff, that is, if he had stopped short of misappropriating state money, we might have a different question, and one which we need not discuss nor determine now. It might then be that his misconduct was personal and unconnected with his office; and besides the state would not then have lost and neither the sureties nor the plaintiff would have become liable to the state. But he did not stop. He paid the spurious warrant out of state money, he contemplated doing so when he procured and negotiated the warrant, his fraud would hardly have been effective unless he did so, and the abstraction and forgery and sale and payment of the warrant were connected acts in one entire plan for the misappropriation of state funds which the pending litigation, since it prevented the immediate use of the warrant, gave the attractive opportunity.

In the case cited the wrongful acts were those of a deputy auditor of a county in this state. Some statements in the opinion are to the effect that his wrongful acts were not official misconduct. We would in any event be unable to adopt this view. In several cases decided by this court the same acts were held of a character making the deputy auditor a criminal and involving his sureties in civil liability. State v. Bourne, 86 Minn. 426, 90 N. W. 1105; State v. Bourne, 86 Minn. 432, 90 N. W.

1108; Board of Co. Commrs. of Ramsey County v. Elmund, 89 Minn. 56, 93 N. W. 1054; Board of Co. Commrs. of Ramsey County v. Sullivan, 89 Minn. 68, 93 N. W. 1056. And on the second appeal the Federal court held that the acts of the officer were misconduct in office for which the surety was liable and took occasion to define its former decision. The acts of the deputy auditor there involved were more clearly official than those of the treasurer here involved; but when the treasurer, in fulfilment of his original purpose, completed his fraudulent scheme of misappropriation of state money by paying the spurious warrant, thus making his sureties liable to the state, and putting a like liability upon the plaintiff, it is an over refinement, where the issue is between the sureties and the innocent purchaser of the warrant, to separate the acts constituting the fraud and hold that those preceding the payment were unofficial and therefore the sureties not liable to the plaintiff after it paid, though liable to the state until the plaintiff paid, and though the plaintiff's payment discharged their liability to the state. And besides the payment of the warrant by the treasurer, which was concededly an official act, made the sureties directly liable to the state and involved the plaintiff in a like liability. Without it no one would have been liable to the state. We hold that under the facts stated and so far as concerns the application of the principles stated in paragraph 1 the acts which resulted in liability of the sureties and of the plaintiff to the state were official.

3. It is conceded that if the plaintiff had knowledge of the facts attending the issuance of the warrant, or notice which if pursued would have resulted in knowledge, or if it was negligent, it cannot recover.

The warrant was assignable but not negotiable. Its character suggested inquiry. It was in the possession of Smith whose apparent duty was to pay it. The state was in funds. Smith took it to Duluth assuming to do so at the request of the school treasurer. The plaintiff, through an officer who had known Smith well for many years, bought it at its face and gave checks payable to Smith. Smith was of good repute. No investigation was made. An inquiry at the state auditor's office would have disclosed all. The transaction was very unusual. The fact that Smith was in possession of the warrant, endeavoring to sell it, when he was directed by its terms to pay it, naturally would have

prompted inquiry. It does not appear how Smith's suggestion alleged in the complaint that it would be an accommodation to the school treasurer was of force, nor his further one that the plaintiff would profit by the treasurer not using it all at once, for he took the checks with him, and they were payable to himself. The situation presented to the plaintiff was one challenging inquiry and demanding the exercise of care.

In view of the facts recited, a majority of the court are of the opinion that the complaint does not sufficiently allege lack of knowledge or notice or the absence of negligence though there is a direct allegation that the plaintiff purchased in due course and in good faith and without notice. The minority view is that the general allegation is sufficient, notwithstanding the special facts pleaded having a tendency to show notice or negligence, and that the issues of notice and negligence are sufficiently tendered by the complaint and are properly determinable when the evidence comes in. The majority view leads to a reversal on the point stated in this paragraph only.

Order reversed.