## AMERICAN SURETY CO. OF NEW YORK v. WAGGONER NAT. BANK. *
### No. 302.

District Court, N. D. Texas, Wichita Falls Division.

Dec. 3, 1934.

Bartlett, Thornton & Montgomery, of Dallas, Tex., for complainant.

Bullington, Humphrey & King and W. E. Fitzgerald, all of Wichita Falls, Tex., and Harry Mason, of Vernon, Tex., for respondent.

ATWELL, District Judge.

C. D. Greene was elected tax collector of Wilbarger county, Tex., in 1924 and took office early in 1925. As such official he collected not only ad valorem and occupation taxes, but also automobile licenses. The proper county authorities, under the Texas statute, designated the First State Bank of Vernon as depository for county funds, which included, unmistakably, the first two classes of collections. Greene's immediate predecessor deposited automobile license collections in the Farmers State Bank, an institution other than the regular depository, and Greene apparently followed the practice of keeping such receipts out of the depository, and made use of the Waggoner National Bank for that purpose. From that institution he would make his remittances to the county or to other legal authorities, some time after their receipt and deposit. The complainant in this cause was his official surety and bound itself for the faithful conduct of his official duties.

All went well until the years 1931 and 1932. In May of 1932, after Greene had been in office, including two years as a deputy collector, and when he was a candidate for another term, more than nine years, a shortage was discovered in the approximate sum of $100,000, and he was convicted and sent to the penitentiary, where he served eight months, when the Governor pardoned him. Up to the time of the exposure, he enjoyed a good reputation and no one seemed to question his integrity.

Judgment affirmed 83 F.(2d) 249.

The state brought suit against the complainant and recovered approximately $100,000, which was paid. The complainant then brought suits against the depository bank and the respondent. The two causes, which claimed the usual grounds for recovery, including negligence of the institutions in their failure to discover the embezzlements and the right of subrogation, involved, in their ripening, the inspection of many checks, books, papers, and documents, somewhat tedious in detail.

Perhaps it should be added that the entire complaint of the surety company in the two suits, one of which has been settled, as above stated, was based upon forty checks; twenty-nine of which related to the First State Bank action and eleven of which concern this suit. The eleven checks represented a little less than $14,000, two, respectively, for $4,500 and $3,600, aggregated $8,100, which left nine for the disposition of the remainder of the $14,000.

■ A deposit by a fiduciary, in his individual bank account, of checks which show on their face that they represent fiduciary funds, is sufficient evidence of misappropriation to impose on the bank a duty of inquiry. Farmers' Loan & Trust Co. v. Fidelity Trust Co. (C.C.A.) 86 F. 541; Havana Cent. R. Co. v. Central Trust Co. (C.C.A.) 204 F. 546, L.R.A.1915B, 715; Oklahoma State Bank v. Galion Iron Works & Mfg. Co. (C.C.A.) 4 F.(2d) 337; Wagner Co. v. Bank, 228 N.Y. 37, 126 N.E. 347, 9 A.L.R. 340; United States F. & G. Co. v. Adoue & Lobit, 104 Tex. 379, 137 S.W. 648, 138 S.W. 383, 37 L.R.A.(N.S.) 409, Ann.Cas. 1914B, 667.

It is not thought, however, that the rule which governs here is the same.

■ The complainant contends that article 2549 of the Revised Statutes of Texas is general in its direction and applies to all forms of taxes, including automobile license fees. That article, 6675a—1 et seq., of the same statutes (Acts 1929, 2d Called Sess., c. 88, as amended by Acts 1930, 5th Called Sess., cc. 23, 33), which gives the collector the right to garner license fees collections and then later dispense them to a highway commission and county boards, has no effect upon the far-reaching covering character of the first article.

While, as is often the case, the statutes are not entirely free of doubt, since the phrase, "all taxes" is used in 2549, the history of the legislation and the decisions of the state courts, and the practice of collectors in Texas, rather incline us to the thought that 6675a—1 et seq. regulates automobile license fees and that 2549, being anterior in point of birth, does not. Article 2549 requires the moneys, "as soon as collected," to be deposited in the depository. Article 6675a—10 (Acts 1929, 2d Called Sess., c. 88, § 10) directs the garnering of the license fees without distribution, by the collector, for a week at a time in some place. When the collections are so large as they are now by reason of the universality of the motorcar, it is useless to think of a collector holding such funds in his pockets, or in the till of his office. He must be permitted to deposit them somewhere. That somewhere must be his choice. Because he is directed, after a certain period, to make disbursement thereof.

The complainant also contends that the respondent bank was a trustee, and, therefore, charged with all of the responsibilities that arise from that relationship.

■ There was no law which required that these funds should be deposited in any particular institution. The collector had a right, therefore, to deposit in the respondent bank. The relation that resulted was simply that of debtor and creditor. The fiduciary, having general authority to deposit funds, must have power to draw them and to direct their disposition. The deposit did not operate to take the funds out of his control. So long as they were in his control they were not diverted. He had a right to deposit in a bank to his individual credit. Knowledge on the part of the bank of the nature of the funds did not affect its responsibility. It had a right to assume that he would apply the funds to their proper use under his trust. If he could deposit in his own account, he could draw out. If the depositing constituted no diversion, neither would the drawing. The bank, under a situation of the sort, which is made here, "does not assume the hazard of correctly reading in each check the purpose of the drawer." There was no actual knowledge of any improper purpose or diversion. None of the checks, no circumstance of their negotiation by the fiduciary constituted guilt or bad faith by the bank.

It also insists that the fact that the moneys were deposited by Greene, collector, and drawn out on checks signed by Greene as collector, payable to Greene individually, was legal notice that Greene was making an improper use of the funds. In other words, that it constituted sufficient ground for the bank to have instituted an inquiry which would have developed the facts.

The rule seems to be, in a case of this sort, quite the contrary. There was nothing in Greene's attitude toward the account, nor in his life, nor in the method of cashing any of the checks, that constituted such notice as put the bank upon inquiry. Later, in truth, after Greene's peculations had become the subject of whisperings, and when there was still a balance in the bank, it called the county authorities and refused to pay out the balance upon Greene's check until the authorities had agreed thereto. This seems to have been the first intimation that the bank had and as soon as it got it it acted.

The heavy loss by the surety company awakens our sympathy and has caused a careful consideration of the record as well as thoughtful weighing of the contentions. As between it and the bank, the law seems to be with the bank.

Such cases as Fidelity & Deposit Co. v. People's Bank (C.C.A.) 44 F.(2d) 19; Fiman v. State of South Dakota (C.C.A.) 29 F.(2d) 776; American Surety Co. v. Jackson (C.C.A.) 24 F.(2d) 768; Merchants' National Bank v. School District No. 8 (C.C.A.) 94 F. 705; Board of Com'rs of Crawford County v. Strawn (C.C.A.) 157 F. 49, 15 L.R.A.(N.S.) 1100; Allen v. United States (C.C.A.) 285 F. 678; Leach v. Farmers' Savings Bank, 204 Iowa, 1083, 216 N.W. 748, 65 A.L.R. 679, support the salutary rule that the deposit of funds in an institution other than a legal depository, when such depository exists, results in the bank becoming a trustee ex maleficio, and it can only be relieved of its liability by a restoration of the funds. The facts here do not justify the application of the doctrine. Nor may there be an application of the doctrine that grows out of cases which announce that a trustee for public funds is an insurer of the proper application of such funds, as is maintained in United States v. Thomas, 15 Wall. (82 U.S.) 337, 21 L.Ed. 89; Bell v. McDonald, 9 Tex. 378, and Swann v. State, 48 Tex. 120. The liability of a bank where it is charged by the face and form of withdrawal checks with notice on knowledge that funds are being withdrawn for personal use is evidenced by such cases as Massachusetts Bonding & Ins. Co. v. Standard Trust & Savings Bank, 334 Ill. 494, 166 N.E. 123; State v. Citizens' National Bank, 91 Ind.App. 106, 170 N.E. 346; Franklin Savings Bank v. International Trust Co., 215 Mass. 231, 102 N.E. 363; Claflin v. Bank, 25 N.Y. 293; Gale v. Chase National Bank, 104 F. 214, 43 C.C.A. 496; Oklahoma State Bank v. Galion Iron Works & Mfg. Co. (C.C.A.) 4 F.(2d) 337; Farmers' Bank v. United States F. & G. Co. (C.C.A.) 28 F.(2d) 676; Toronty Club v. Imperial Trust Co., 25 Ont. 330, and Niagara Woolen Co. v. Pacific Bank, 141 App.Div. 265, 126 N.Y.S. 890. It may be admitted that they speak the rule as applicable to the facts of those respective cases, provided we recognize the greater weight of authority to be that if the bank is without notice or knowledge to the contrary, it has the right to presume that the depositor will not violate his trust. But, if the bank has notice or knowledge that a breach of trust is being committed by an improper withdrawal and use of the fund, it then becomes liable for the misappropriation.

For the bank, as showing the rule as to the state statute with reference to the deposit of taxes and of automobile license fees, as well as to the general equities of the case, and the challenging of the suggestion that the bank must take notice from the form of the checks, the following cases seem to be well considered: Austin v. McCary (Tex.Civ.App.) 297 S.W. 1097; City National Bank v. Eastland County (Tex.Civ.App.) 12 S.W. (2d) 662, 664; Linz v. Eastland County (Tex.Com.App.) 39 S.W.(2d) 599, 77 A.L.R. 1466; Miller v. State (Tex.Civ. App.) 53 S.W.(2d) 792; City of El Paso v. Two Republics Life Insurance Co. (Tex. Civ.App.) 278 S.W. 231, 233; Booth v. City of Dallas (Tex.Civ.App.) 179 S.W. 301, 303; Lowery v. English (Tex.Civ. App.) 299 S.W. 482; Interstate National Bank v. Claxton, 97 Tex. 569, 80 S.W. 604, 65 L.R.A. 820, 104 Am.St.Rep. 885; Empire Trust Co. v. Cahan, 274 U.S. 473, 47 S.Ct. 661, 71 L.Ed. 1158, 57 A.L.R. 921; Rodgers v. Bankers National Bank, 179 Minn. 197, 229 N.W. 90; Santa Marina Co. v. Canadian Bank of Commerce (C.C.A.) 254 F. 391; Maryland Casual-

**298**

ty Co. v. City National Bank (C.C.A.) 29 F.(2d) 662; Kendall v. Fidelity Trust Co., 230 Mass. 238, 119 N.E. 861; Pan-American Transport Co. v. United States, 273 U.S. 456, 47 S.Ct. 416, 71 L.Ed. 734; United States F. & G. Co. v. Metropolitan National Bank (D.C.) 1 F.Supp. 514, 525; National Surety Co. v. Arosin (C.C.A.) 198 F. 605; American Surety Co. v. Citizens' National Bank (C.C.A.) 294 F. 609, 615; American Bonding Co. v. State Savings Bank, 47 Mont. 332, 133 P. 367, 46 L.R.A.(N.S.) 557; American Surety Co. v. Robinson (C.C.A.) 53 F.(2d) 22, and American Surety Co. v. Lewis State Bank (C.C.A.) 58 F.(2d) 559. These last two cases are by the Circuit Court of Appeals for this Circuit.

Judgment must be entered for the respondent, and the complainant's bill dismissed.