STATE BANK OF MORA v. G. G. BILLSTROM
AND ANOTHER.
AMERICAN SURETY COMPANY OF NEW YORK,
APPELLANT.[1]

June 20, 1941.

No. 32,834.

[1]Reported in 299 N. W. 199.

498

*Fowler, Youngquist, Furber, Tuney & Johnson,* for appellant.

*Guesmer, Carson & MacGregor* and *Robert B. Gillespie,* for respondent.

HOLT, JUSTICE.

Plaintiff sued G. G. Billstrom and American Surety Company, the surety on Billstrom's official bond as county auditor of Kanabec county, for the loss sustained from the purchase of two county warrants wrongfully issued and negotiated by Billstrom. Billstrom did not answer. Verdict was for plaintiff. The defendant surety's motion for judgment notwithstanding the verdict was denied. The appeal is from the judgment.

G. G. Billstrom had been county auditor of Kanabec county since 1927 and at the election in the fall of 1934 was·reëlected for the term commencing January, 1935. He duly qualified, and appellant became the surety on his official bond. February 2, 1938, Billstrom issued a county warrant to his own order in the sum of $166.66 for "County Auditor's Salary," endorsed and negotiated the same to Nicollet Hotel Company, Minneapolis. The warrant was sent to plaintiff for collection and presented for payment to the county treasurer February 26, 1938. It was not paid for want of funds and so endorsed by the county treasurer and entered on his register. Plaintiff thereupon remitted to its correspondent for the warrant and thereby became the owner and holder thereof. Another county warrant dated March 31, 1938, in same amount and for the same purpose was issued by Billstrom, payable to his order, negotiated and endorsed to the Nicollet Hotel Company, and sent to plaintiff for collection. When presented for payment, there being no funds available, the county treasurer endorsed thereon that it was so presented April 5, 1938, and so entered on his register. Plaintiff also remitted to its correspondent for this warrant and became owner thereof. Both warrants were wrongfully and unlawfully issued by Billstrom, for there was no salary then due

him. In fact, he had prior thereto illegally overdrawn his salary. This course he appears to have pursued from at least May 1, 1936, up to his resignation as auditor on July 1, 1938, when his malfeasance was discovered.

There are nine assignments of error, nearly all directed to the proposition that appellant is entitled to judgment notwithstanding the verdict, that the evidence does not support the verdict, and that it is contrary to law. There is also error assigned as to the reception of evidence of the custom and practice of Billstrom of issuing warrants without strict compliance with the statute respecting a statement on the face of the warrant of the time during which the salary was earned which it purports to pay.

The official bond of Billstrom is for the benefit of anyone injured by his delinquency. 2 Mason Minn. St. 1927, § 9698. The bond sued on is conditioned:

"Now, Therefore, if the said G. G. Billstrom, shall faithfully and impartially, in all things, during his continuance in said office, perform the duties thereof without fraud, deceit or oppression, * * * then this obligation shall be void; otherwise to remain in full force and effect."

Unquestionably the issuing, endorsing, and negotiating of these two warrants were fraudulent and criminal acts likely to cause loss or injury when the warrants were put in circulation. Of such warrants it was said in First Nat. Bank v. School District, 173 Minn. 383, 388, 217 N. W. 366, 368, 56 A. L. R. 1369:

"We take judicial notice of the fact that from very early days, while municipal warrants have never been negotiable, they have been transferable by indorsement and delivery and have been treated by banks and dealers in commercial paper as having all the attributes of negotiability except that of freedom from original defenses."

The theory of the defense, elaborately treated by counsel for appellant, is that these warrants are on their face void because

they fail to specify the time for which the salary was earned. Reliance is placed on 1 Mason Minn. St. 1927, § 836, reading:

"No claims against the county shall be paid otherwise than upon allowance of the county board, upon the warrant of the chairman thereof, attested by the auditor, except in those cases in which the precise amount is fixed by law, or is authorized to be fixed by some other person, officer, or tribunal, in which cases the same shall be paid upon the warrant of the auditor, upon the proper certificate of the person, officer, or tribunal allowing the same: Provided, that no money shall be disbursed by the county board, or any member thereof, but only by the county treasurer upon the warrant of the chairman of the county board, attested by the auditor, specifying the name of the party entitled to the same, on what account and for what purpose issued, upon whose allowance, if not fixed by law, and the fund from which it is payable. If in payment for services, the specific time for which the same were rendered shall be therein stated, and all orders and warrants shall be progressively numbered, and the number, date, and amount of each, the name of the person to whom payable, and the specific time for which any service was rendered, shall, at the time of issuing the same, be entered in a book to be kept by the auditor for that purpose."

It is doubtful whether a salary warrant comes within this statute. The last sentence does not seem to fit the payment of salaries of elective officers. The auditor's annual salary is determined by a percentage of the assessed valuation of the real and personal property in the county. 1 Mason Minn. St. 1927, § 837. So the salary is fixed by law. Our attention has not been called to any statute directing when payment of the auditor's salary is to be made. Customarily it may be said that salaries of elective county officers are paid by the month, but not in advance. There is nothing in the quoted statute which declares a salary warrant void if it fails to state on its face the time of service covered thereby. Of course, there could have been no recovery upon such

a warrant by plaintiff against the county, even had the warrant on its face stated that it was for a certain past month, and had it been properly registered, if the proof disclosed that no salary was due. On the other hand, could the county successfully have resisted recovery by plaintiff upon these very warrants if the amount thereof had been due Billstrom on his salary with sufficient available funds for their payment in the county treasury? We apprehend not.

Another matter is to be borne in mind. In this action for loss or damages caused plaintiff by Billstrom's malfeasance, he has no defense. Appellant as his surety should be in no better position, unless it be shown that it has been released from its obligation by plaintiff's participation in or connivance with Billstrom's wrongful acts, or there be proof that plaintiff's negligence in acquiring the warrants was the proximate cause of its loss. This appears to be settled by Cooper, Myers & Co. v. Smith, 139 Minn. 382, 166 N. W. 504.

There is nothing in the record even suggesting that plaintiff or the county treasurer, when he endorsed on the warrant the lack of funds available for payment, had any inkling of Billstrom's wrongdoing. Billstrom was then of good repute in Mora. He was the president of the county auditors' association. Appellant does not hint at any connivance between plaintiff and Billstrom in the transactions here involved. The only ground left upon which appellant might be released from its obligation under the bond is that plaintiff's negligence caused its loss. That issue was properly submitted to the jury and determined against appellant. All the cases to which we have been cited seem to hold that an innocent holder or one who without negligence has become holder of commercial paper like county warrants, not negotiable under the uniform negotiable instruments act, has equities superior to those of the surety of the principal whose misconduct caused the loss. This principle of law has been applied in cases where the surety has made good the loss to the obligee and seeks recovery from the one who obtained the money procured by the principal's

tort, in other words, to subrogation actions. Among all the authorities cited, none is identical to the instant case. But the following sustain the principle above stated that in order for the surety on the official bond, like the present, to be released from the obligations thereof to make good to one who has suffered loss from the principal's misconduct, there must be proof either of participation or connivance by the loser in the misconduct, or else that his negligence was the proximate cause of the loss: Cooper, Myers & Co. v. Smith, 139 Minn. 382, 166 N. W. 504; Meyers v. Bank of America Nat. T. & S. Assn. 11 Cal. (2d) 92, 77 P. (2d) 1084; Stewart v. Commonwealth, 104 Ky. 489, 47 S. W. 332; American Bonding Co. v. State Sav. Bank, 47 Mont. 332, 133 P. 367, 46 L.R.A.(N.S.) 557; American B. & T. Co. v. Milstead, 102 Va. 683, 47 S. E. 853; Williams v. Lyman (8 Cir.) 88 F. 237; National Surety Co. v. Arosin (8 Cir.) 198 F. 605; American Surety Co. v. Citizens' Nat. Bank (8 Cir.) 294 F. 609; American Surety Co. v. Robinson (5 Cir.) 53 F. (2d) 22, 23; American Surety Co. v. Lewis State Bank (5 Cir.) 58 F. (2d) 559. In American Surety Co. v. Robinson, *supra*, the court quotes with approval this statement in American Bonding Co. v. Welts (9 Cir.) 193 F. 978, 980, in denying subrogation:

"From the averments of the bills in these cases it is clear that the proximate cause of the county's loss and of the resultant loss to the appellant was the malfeasance of the auditor, for whose official honesty and faithfulness the appellant had bound itself. To permit it to recoup a loss so sustained by means of subrogation out of those for whose benefit, in part, the surety company assumed the obligation, would be to put that doctrine to a use wholly foreign to its nature."

Appellant relies on Foster v. Malberg, 119 Minn. 168, 137 N. W. 816, 41 L.R.A.(N.S.) 967, Ann. Cas. 1914A, 1116—the doctrine of *caveat emptor*. The action was to hold the auditor and the surety on his official bond liable to the purchaser of a tax title void because the auditor neglected to publish the notice of sale. The

court first cited County Commrs. v. Jones, 18 Minn. 182 (199), to refute the contention that the auditor might be liable though the sureties be excused; and held the auditor not liable to the purchaser of a tax title on the ground that the doctrine of *caveat emptor* prevents the purchaser from recovering the value of the land he failed to get. The reason for the application of that doctrine to tax title purchasers is fully discussed. F. H. Wellcome Co. v. County of Marshall, 174 Minn. 431, 219 N. W. 545, involves tax titles and follows and applies Foster v. Malberg, 119 Minn. 168, 137 N. W. 816, 41 L.R.A. (N.S.) 967, Ann. Cas. 1914A, 1116.

We deem it not necessary to consider any other assignment of error except Nos. 2, 3, and 4. These may be treated together. Salary warrants issued by and to Billstrom from January, 1936, until his resignation were received over appellant's objection. All were in the same form as those in suit, except those for the first four months in 1936, which stated the month the warrant covered. There were also two warrants received over objection issued to others than Billstrom, for fees which did not state the term covered. To the reception of these warrants in evidence appellant objected because violative of said § 836. The manner in which the banks and county treasurer had handled Billstrom's salary warrants appears to us to bear on the issue of negligence. The court charged the jury that the burden was upon plaintiff to prove that it acquired the warrants in good faith and had no notice or knowledge of their invalidity or of any facts which would naturally lead an honest and prudent person to make inquiry concerning their validity. And also:

"The custom or practice of evading or disregarding the statutory provisions as to what warrants shall contain constitutes no legal justification for failing to make due inquiry and investigation to ascertain the validity of a warrant when offered to a purchaser."

We think the exhibits were properly received, and that, under the charge of the court, no prejudice could result to appellant.

The judgment is affirmed.

