## Case No. 7,230.

### JAUDON v. NATIONAL CITY BANK.

[8 Blatchf. 430.] [1]

Circuit Court, S. D. New York. May 10, 1871 [2]

Theron R. Strong, for plaintiff.

William W. McFarland, for Duncan, Sherman & Co.

William H. Arnoux, for the National City Bank.

---

[1] [Reported by Hon. John McLean, Circuit Justice.]

[1] [Reported by Hon. Samuel Blatchford, District Judge, and here reprinted by permission.]
[2] [Affirmed in 15 Wall. (82 U. S.) 165.]

BLATCHFORD, District Judge. The plaintiff is the wife of the defendant Charles B. Jaudon. She is a daughter of the late Commodore William Bainbridge, who died in 1833, leaving a will, under the provisions of which she has a separate estate of her own, placed by the will in trust for administration. By the will, the testator, after making certain legacies, directed that all his real estate should be sold, and appointed William Lynch and Hugh Colhoun to be trustees, to receive all the residue of his estate, "and to invest the same in the stocks of the United States, or the stocks or funds of any individual state, and to hold the same in trust for the following purposes:" (1) $28,000 to be invested, and the interest of it to be paid to his wife for her life, and at her death such stocks or funds to be equally divided among his four daughters, (the plaintiff being one), "the trust to remain the same for their sole use and benefit." (2) Enough to be invested to create an annual interest of $150, to be paid to his sister Mary during her life, and, at her death, the invested amount "to be, in trust, equally divided" between his said four daughters. (3) In respect to each one of said four daughters, an equal one-fourth part of his remaining estate to be invested in the funds or stocks before mentioned, in trust, the interest whereof to be paid to the daughter, for her sole use and benefit during her life, and, at her death, the amount so invested to be equally divided among her children. By a codicil, he directed that the loan which he held of the city of Philadelphia, and the Southwark loan, and the ground rents, be not sold, but be considered by the trustees as equal to the stocks or funds before mentioned. The trustees named in the will were, in May, 1835, on their own petition, discharged from their trust by the court of common pleas for the city and county of Philadelphia, and the defendant Samuel Jaudon was, at the same time, appointed by that court trustee, under said will, for the widow, the sister and the four daughters, and, in June, 1835, he received from the outgoing trustees all the trust estate held by them. At the death of the testator, a considerable portion of his estate consisted of stock of the state of Pennsylvania, paying an interest of five per cent. per annum. The trustees named in the will made no change, while they continued to be trustees, in any of the investments, but left them as they were at the death of the testator. Soon after Samuel Jaudon was appointed trustee, he sold the Pennsylvania stock and invested its proceeds in stock of the Delaware and Raritan Canal Company. This stock he apportioned among the trusts created by the will, allotting to the trust for the plaintiff 93 shares. Although this was an investment not authorized by the will, the plaintiff approved of it, and, from time to time, received from the trustee the dividends made on the 93 shares. In 1857, the widow died,

and the Delaware and Raritan Canal stock, which belonged to the trust for her, was divided by the trustee among the trusts for the four daughters, 28 shares of it going to the trust for the plaintiff. Thus the trust for the plaintiff embraced 121 shares of Delaware and Raritan Canal stock, and the plaintiff thereafter received, from time to time, from the trustee, the dividends made on the 121 shares, knowing of the investment. Afterwards, some property which had belonged to the testator was sold, and, from that source and other sources, the trustee came to hold under the trust for the plaintiff, in addition to the 121 shares of canal stock, $5,600 in United States stock, known as "five-twenty bonds."

The bill seeks to make the trustee, Samuel Jaudon, responsible for the value of the $5,600 of United States stock, and of 117 shares of the canal stock, as having been disposed of by him in breach of his trust, and to have him removed from his trust and another trustee appointed in his place. It also seeks to make the defendants, the National City Bank, responsible for the value of 47 shares of the canal stock, and to make the defendants, Duncan and others, who compose the firm of Duncan, Sherman & Co., responsible for the value of 70 shares of the canal stock, as having been received by them respectively from the trustee, and sold, and appropriated to their use respectively, under circumstances which make them liable equally with the trustee, to the plaintiff, for the breach of trust committed by such trustee.

On the 16th of October, 1865, Samuel Jaudon applied to the National City Bank for a loan of $6,000, on a pledge or hypothecation of 47 shares of the stock of the Delaware and Raritan Canal Company, evidenced by two certificates of stock, one for 19 shares and one for 28 shares. The $6,000 was loaned to him by the bank, October 16th, 1865, on that security, he giving to the bank no obligation note or due bill for the loan, but merely depositing with it the two certificates, the loan being regarded as a loan strictly on demand, but practically as one for three months. The certificate for the 19 shares was dated January 27th, 1852, and certified that "S. Jaudon, trustee for Mrs. Mary T. B. Jaudon," was entitled to that number of shares in the capital stock of the company, transferable on the books of the company and on surrender of such certificate, only by him or his legal representative. The certificate for the 28 shares was dated April 14th, 1864, and certified that "S. Jaudon, trustee of Mrs. Mary T. B. Jaudon," was entitled to that number of shares in the capital stock of the company, transferable on the books of the company only by him or his legal representative. Accompanying the two certificates when they were so deposited with the bank, but on a separate piece of paper, was an instrument dated April 18th, 1864, signed "S. Jaudon, Tr. of M. T. B. Jaudon," and stating

that "Sam'l Jaudon, trustee of M. T. B. Jaudon," thereby sold unto ——— 47 shares "of the joint stock of the Delaware and Raritan Canal Co., and. Camden & Amboy Railroad and Transportation Co." standing in his name on the books of the said companies, and appointed ——— his attorney to transfer such stock. ·On the 27th of November, 1865, the bank loaned to Samuel Jaudon the further sum of $3,500 on a pledge of the same 47 shares of stock with other securities. He repaid this loan of $9,500, with interest, on the 17th of January, 1866. He borrowed from the bank the like sum of $9,500, on a pledge of the same securities, on the 19th of January, 1866. This transaction of the borrowing by him from the bank the like sum of $9,500, on a pledge of the same securities, was repeated seven times more, namely, on the 18th of April, 1866, the 19th of July, 1866, the 13th of October, 1866, the 19th of January, 1867, the 13th of April, 1867, the 6th of July, 1867, and the 12th of October, 1867. Such loan on the 19th of January, 1866, was repaid, with interest, on the 11th of April, 1866. The. first six of the remaining seven loans were repaid, with interest, severally, on the 16th of July, 1866, the 10th of October, 1866,· the 14th of January, 1867, the 10th of April, 1867, the 29th of June, 1867, and the 10th of October, 1867. The loan of the 12th of October, 1867, not being paid on demand, the bank, on the 10th of December, 1867, sold the 47 shares of stock, at the request of Mr. Jaudon, for the net sum of $5,897.90, which was applied on account of the loan on the 11th of December, 1867. The securities were returned to Mr. Jaudon every time he paid up the amount of a: loan, and redelivered to the bank by him every time a new loan was made to him.

On the 18th of July, 1867, Samuel Jaudon applied to the defendants, Duncan, Sherman & Co., for a loan of $7,000, which was made to him by them on that day, on the pledge or hypothecation of 70 shares of the stock of the Delaware and Raritan Canal Company, evidenced by one certificate of stock, for 70 shares. The amount was loaned on that security alone. It was a. loan at 90 days. Whether a note was given for it, or not, is not certain. The certificate was deposited with Duncan, Sherman & Co., at the time the loan was made. The certificate was dated December 13th, 1851, and certified that "S. Jaudon, trustee for Mrs. Mary T. B. Jaudon," was entitled to 70 shares in the capital stock of the company, transferable on the books of the company, and on surrender of such certificate, only by him or his legal representative. Accompanying the certificate, when it was so deposited with Duncan, Sherman & Co., but on a separate piece of paper, was an instrument signed, "S. Jaudon, trustee of .M. T. B. Jaudon," and stating that "S. Jaudon, trustee of M. T. B. Jaudon," thereby sold unto ——— 70 shares "of the joint· stock of the Delaware and Raritan

Canal, and Camden & Amboy Railroad & Transportation Compys.," standing in his name on the books of the said companies, and appointed ——— his attorney to transfer the stock. On the 16th of October, 1867, when the 90 days expired, Mr. Jaudon obtained from Duncan, Sherman & Co.,' on the same stock, a further loan of $600, and at the same time gave directions to them to sell the stock. Between the 16th of October, 1867, and the 21st of October, 1867, the 70 shares were sold by Duncan, Sherman & Co., for the net sum of $8,699.12. On the last-named day, the loans, with interest, amounted to $7,729.88, and, on that day, Duncan, Sherman & Co. applied that amount, from the proceeds of the sale, to the payment of the loans and interest, and paid over to Mr. Jaudon the remainder of the proceeds, amounting to $969.-24. The power of attorney, accompanying the certificate for the 70 shares, is dated October 16th, 1807, (a mistake for 1867,) and that date was probably filled in October 16th, 1867, and it bears the signature, as a witness to its execution, of Mr. J. C. Hull, the cashier of Duncan, Sherman & Co., who, at the direction of .Mr. William B. Duncan, of that firm, transacted the business of receiving the certificate, and transfer, and power of attorney, from Mr. Jaudon, and furnishing him with the money loaned. ·

The sales of the 117 shares were made under the powers of attorney before named, the blanks therein having been filled up at the office of the company, when, under the powers, the shares were transferred on its books, and the certificates were surrendered. Notwithstanding the sale of the shares, Mr. Jaudon, in February, 1868, paid to the plaintiff an amount of money equal to the amount of the dividend then paid on the 117 shares, and in August, 1868, he paid to her the sum of $205, as on account of the dividend then paid on such shares. Since that time, she has not received anything on account of the income of the shares, nor have they been restored to the trust. The plaintiff did not know .of any of the loans, or of any of the pledges of the shares, or of the sale of any of the shares, until December, 1868. She never authorized or ratified any of the transactions. Mr. Jaudon used the moneys obtained by him from the bank, and from Duncan, Sherman & Co., on the loans, to pay which the stocks were sold, to discharge indebtedness incurred by him individually in making investments in stock of the Broad Top Coal and Iron Company, which he anticipated would be remunerative, and, if they were, he had the intention of offering to the plaintiff shares in such company to replace the 117 shares. Such investments were made by him in his individual name. The plaintiff had no knowledge of such use of the moneys, or of such investments, or of such intention. The investments turned out to be worthless, and the stock was never offered to her. Mr. Jaudon is insolvent, and

the trust has never received any of the proceeds of the stock, or any moneys, in replacement thereof. The evidence shows, that when Mr. Jaudon applied to Duncan, Sherman & Co., for the original loan, he informed Mr. Duncan about his having made investments in the Broad Top Company, and made known to him his expectation of being able to repay the loan from the fruits of such investments.

There is no foundation in the evidence for the proposition that Mr. Jaudon had any authority from the plaintiff, either specific or general, to sell or dispose of the 117 shares, or to pledge the same, or borrow money on them. The stock was a valuable stock. The 47 shares sold for over 25 per cent. net above par, and the 70 shares for over 24 per cent. net above par. The semi-annual dividends upon it had averaged five per cent., in money, and it had occasionally made dividends in stock, besides.

On these facts, there can be but one conclusion, and that is, that not only Mr. Jaudon, the trustee, but the bank and Duncan, Sherman & Co., must respond to the trust for these shares of stock—the bank for the 47 shares, and Duncan, Sherman & Co. for the 70 shares. The certificates, on their face, not only stated that Mr. Jaudon held the shares in trust, but gave the name of the plaintiff as the cestui que trust. The powers of attorney indicated that he was transferring the shares so held by him in trust. The transactions of loan indicated, not that he was selling the shares in the ordinary course of his business, as trustee, but that he was borrowing money for his private use, on a pledge of what was in his hands as trust property. The sales of the stock, when they were made by the pledgees, were made by them with knowledge that the proceeds were to be applied to pay the private debts of the trustee to the pledgees, and the pledgees applied the proceeds to pay such private debts. In regard to Mr. Duncan, he was informed that the loan was to be repaid by Mr. Jaudon out of the fruits of investments which he had made in the stock of a company which was named. That stock was a stock which Mr. Duncan was bound to know was a security in which it was unlawful, by the general principles of law, and, in the absence of special authority, for a trustee to invest trust funds. He must, therefore, be held chargeable with knowledge that the loan was to be repaid from sources with which the trust could have no connection, and, therefore, from sources altogether private to the borrower. In regard to the bank, the making of ten separate loans to Mr. Jaudon, running through a period of two years, upon the pledge of the stock, evidenced by such certificates, must be held as charging the bank with notice that Mr. Jaudon was borrowing the money for his private uses, on a pledge of trust property. The circumstances were such as to put the parties on inquiry. Inquiry would have directed them to the cestui que trust, and the unlawfulness of the transactions would have been disclosed. They made no inquiry, even of Mr. Jaudon, as to how it was that he was borrowing money on a pledge of shares held by him as trustee. The case is not even one of a sale of the shares directly, which might presumably be within the scope of the authority of a trustee, with a view to a re-investment within such authority. A trustee, however, stands on a different footing from an executor or an administrator, or even a guardian, in many respects. A trustee presumptively holds his trust property for administration, and not for sale; and, according to the well settled principles of equity, a pledge by him of certificates of stock like those in this case, as security for loans of money made to him under circumstances like those in this case, entitles the cestui que trust to follow the property into the hands of the pledgee and reclaim it from him, where he has received the fruits of it, and there was in fact a breach of trust in making the pledge. The transactions with the pledgees in this case negatived the idea that Mr. Jaudon had any purpose, in borrowing the money, of selling the stock, and, therefore, negatived the idea that his action could be that of a trustee selling the stock. He said plainly, by the transactions, that he did not wish to sell the stocks; that, as between him and the trust, no such thing as a sale of the stocks was the purpose of the transactions; and that he intended to repay the borrowed money and reclaim the stocks.

The pledgees had reasonable ground for believing, when they made the loans, to pay which the stock was sold, that Mr. Jaudon intended to apply the money loaned to his private uses. They enabled him to commit the breach of trust which he committed. What he did was accomplished by their co-operation. The law implies notice to them of the terms of the trust, whose existence the certificates disclosed. It was negligence in them to take the certificates in pledge for the loans without inquiry. Such inquiry of the plaintiff would have shown that the borrowing of the money was for no purposes of the trust. They must bear the consequences of their negligence. McLeod v. Drummond, 17 Ves. 152; Field v. Schieffelin, 7 Johns. Ch. 150; Lowry v. Commercial & Farmers' Bank [Case No. 8,581]; Pendleton v. Fay, 2 Paige 202, 205; Shaw v. Spencer, 100 Mass. 382, 389–392; Bayard v. Farmers' & Mechanics' Bank, 52 Pa. St. 232; Baker v. Bliss, 39 N. Y. 70, 73, 76; Carr v. Hilton [Case No. 2,437].

The bill has been taken as confessed against the defendant Samuel Jaudon. There must be a decree that he account for the United States stock appropriated by him to his own use, with the interest that would have been received thereon, and for the 117 shares of the stock of the canal company, and for the dividends thereon, and that he

restore such property to the trust or pay its value into court. There must also be a decree against the bank and Duncan, Sherman & Co. severally, that they account severally, the former for the 47 shares, and the latter for the 70 shares, of the stock of the canal company, pledged with them severally and sold, and for all dividends thereon since made, and restore such shares and property to the trust or pay its value into court. It will be referred to a master to take and state such accounts, allowing the proper credits. All other questions are reserved until the coming in of the report of the master.