# THE STATE NATIONAL BANK

## *v.*

## JAMES REILLY.

### *Filed at Springfield May 9, 1888.*

1. BANKS AND BANKING—*trust funds on deposit—paying out on checks of depositor.* Where a bank account is opened between a depositor, as trustee, generally,—not as a permanent investment, but to be drawn against, —the contract of the bank is, that it will pay out the same on the checks of the depositor, and when such checks are drawn in proper form, the bank is bound to presume they are drawn in the proper discharge of the duty of the trustee, and to honor them accordingly.

2. SAME—*bankruptcy funds on deposit—in what manner to be paid out—duty and liability of the bank.* Under act of Congress and the rule of court, all sums of money received by assignees in bankruptcy, and by the clerk of the United States District Court, were required to be deposited with a certain bank to be named by the court, to be drawn out upon the checks of the court. The funds so deposited were kept as a unit to the credit of the court, and were paid out on checks signed by the clerk and countersigned by the judge. The clerk failed to make deposit of all the funds received by him, and the bank paid checks drawn on it until it paid out all the funds deposited, but refused to pay other checks drawn, when suit was brought on a check so refused: *Held,* that the bank was not liable to the holder of such check.

3. The bank having properly kept the account of deposits as a unit with and in the name of the district court, as required by the act of Congress and rule 28 in bankruptcy, and the deposits having been properly withdrawn on checks drawn as required by the statute and the rule, for the benefit of the beneficiaries entitled to share in the common fund, it was *held,* that as there was no misappropriation of such funds by the bank, it was not liable for any deficit in the amount due the beneficiaries, arising from the neglect of the clerk to deposit all the trust funds that came to his hands as an officer of the court.

4. In such case, the bank was not bound to take any notice of any memoranda, either on the margin or in the body of any check drawn upon it. Such memoranda are to be regarded as having been made for the convenience of the drawers. Nor was the bank bound to open a separate account as to the several cases in which the deposits were made.

APPEAL from the Appellate Court for the Third District;—heard in that court on appeal from the Circuit Court of Sangamon county; the Hon. WILLIAM R. WELCH, Judge, presiding.

Mr. M. HAY, and Messrs. GREENE, BURNETT & HUMPHREY, for the appellant:

The duty of a bank to keep a separate account did not arise from the manner in which the account was kept by the bank, or directed to be kept by the clerk.

The bank had the right to assume, as it did, that the memoranda accompanying the deposits were for the convenience of the court and its officers, and the right to presume that the court and its officers, in drawing upon the funds deposited, were properly performing their duty in the distribution of the trust fund. *National Bank* v. *Insurance Co.* 104 U. S. 54.

The rules which govern an account kept by a court do not differ from those in other cases. *Otis* v. *Gross*, 96 Ill. 612.

The duty to keep a separate account did not arise from any law of the United States. U. S. Rev. Stat. secs. 5059, 5504, 3642, 3643, 996.

Messrs. PATTON & HAMILTON, for the appellee:

The bank was an officer of the court, and subject to its control. *In re Fire Ins. Co.* 38 Ill. 289.

Mr. JUSTICE SCOTT delivered the opinion of the Court:

This suit was brought by James Reilly, against the State National Bank, on a dividend warrant or check drawn by the clerk of the District Court of the United States for the Southern District of Illinois, on a fund deposited to the credit of that court by the present clerk and his predecessor, with the defendant bank, for the sum of $221.17. The check is countersigned by the judge of that court, and is an absolute order to pay that sum of money to plaintiff. It is in the usual form of a bank check, drawn upon the general fund of the drawer, with-

out specifying any particular fund out of which it is payable, and differs from such check only in the fact it has on the face of it some marginal memoranda, and also some in the body of the check, to both of which reference will be made further on. The facts out of which this litigation arises, appear either from the stipulation of parties, or are so fully proven that no controversy exists as to them.

At the trial, defendant submitted several propositions to be held as law applicable to the case, which the court refused, and that ruling of the court is assigned for error. As the first of the series of propositions submitted, if correct, is conclusive of the whole cause, it will not be necessary to notice or comment on the others. It is, "that the law is, upon the facts in evidence, that the plaintiff is not entitled to recover."

Section 995 of the Revised Statutes of the United States provides: "All moneys paid into any court of the United States, or received by the officers thereof, in any cause pending or adjudicated in such court, shall be forthwith deposited with the treasurer, an assistant, or a designated depositary of the United States, in the name and to the credit of such court." Conforming to this act of Congress, what is called rule 28 in bankruptcy provides, among other things, that "the District Court in each district shall designate certain national banks, if there are any within the judicial district, or if there are none, then some other safe depository, in which all moneys received by assignees, or paid into court in the course of any proceedings in bankruptcy, shall be deposited; and every assignee, and the clerk of said court, shall deposit all sums received by them severally, on account of any bankrupt's estate, in one designated depository, and every clerk shall make a report to the court, of the funds received by him and of deposits made by him, on the first Monday of every month." The rule makes it the duty of assignees to make certain reports to registers in bankruptcy, and defines the duty of such registers, and then further declares: "No moneys so deposited

shall be drawn from such depository unless upon a check or warrant signed by the clerk of the court, or by an assignee, and countersigned by the judge of the court, or one of the registers designated for that purpose, stating the date, the sum, and the account for which it is drawn."

There is no doubt it was in compliance with the act of Congress cited, and the rule in bankruptcy on the same subject, that about the 1st of March, 1873, the defendant bank was designated a depository for the "United States District Court for the Southern District of Illinois." Shortly thereafter, George P. Bowen, since deceased, then clerk of such court, made the first deposit of funds belonging to the registry of the court with the defendant bank, and the bank then, by his direction, opened an account with the "United States District Court for the Southern District of Illinois," and entered such deposit to the credit of that court. The clerk continued to make deposits of funds belonging to the registry of the court, with the bank, up to the time of his death, which occurred in February, 1880, and the bank continued to enter such deposits to the credit of the court, in the manner directed by the clerk making the same. At first "each deposit so made by the clerk was by the bank entered on its books and in the deposit book of the clerk, to the credit of the particular case, (naming the case,) with the number, to which the funds so deposited belonged; that afterwards, by direction of the clerk, all deposits so made were entered by the bank in the name of 'the United States District Court for the Southern District of Illinois,' dropping the name but retaining the number of the case,"— as, for example: "1876, January 21, to Dep. 1637, $5200." It is admitted the bank understood, when these entries were made, the number on either side of the account referred to the case in which the deposit, in the first place, was made, and on which the check, in the second place, was drawn. The evidence shows,—and, indeed, the admission goes that far,— that the bank always treated the account as an entirety, and

paid out of it all checks drawn by the clerk and countersigned by the judge, until the deposits were exhausted. This mode of keeping the account and making payments out of it seems to have been acquiesced in by the court and its principal officer, (the clerk,) under whose direction the deposits were made, for it is admitted that between the time of the first deposit, in March, 1873, and the death of Bowen, in 1880, the bank balanced the account with the court nine different times, returning all checks to the clerk at each balancing, and entering the case number and amount of each check so returned, in the depositor's book. That is the usual course when a depositor draws on his fund in bank as an entirety, and had this not been in conformity with the act of Congress and rule 28 in bankruptcy on the same subject, it is hardly probable the court would have permitted its account to be kept in that way, and payments to be made out of it, as was done through so many years, without interposing some objections or requiring it to be kept otherwise. It does not appear any objection was ever made to that mode of treating the account, and it seems but reasonable to conclude it was satisfactory to the court.

The check in suit was given to plaintiff for a dividend due him from the bankrupt estate of H. Sanford & Co. The case was numbered 2105. Prior to his death, Bowen had made large deposits with defendant of funds derived from that estate, and after his death, his successor in office made quite large deposits of funds received from the same estate, in precisely the same way Bowen had been accustomed to do. It appears that of the funds deposited as having been received in case No. 2105, after deducting all checks drawn for dividends in that particular case, including the check in suit, there would remain a considerable balance to the credit of that case, if the same had not previously been paid out on checks drawn by the clerk, and countersigned by the judge of the court. The difficulty arises out of the admitted fact that the former clerk failed to deposit all the funds that came to his hands belonging

to the registry of the court. Had he done so, there would, of course, have been enough in the bank with which to pay all checks drawn upon the funds of the court. Payment of the check in suit was refused, because the bank, prior to its date, which is May 12, 1881, had actually paid out on checks similar to this one, signed by the clerk and countersigned by the judge, and differing as to the number of the case, names, dates and amounts, all funds ever deposited with it to the credit of the court, either by Bowen or his successor in office.

The principle on which plaintiff seeks to recover is, that the bank had notice, by the manner of receiving and keeping the account, and the form of the checks, that the moneys deposited as having been received from No. 2105 could only be paid to persons presenting checks containing that number, and that making payments otherwise was a misappropriation of such funds in its possession. The position assumed does not, in the opinion of this court, seem to be warranted either by the facts or the law. That the deposits made by the respective clerks of the court were trust funds, and were known to the bank to be such at the time the deposits were made, will be conceded, and taken for granted in all the further consideration of the case. It then becomes a question of law what duty the bank owed to the beneficiaries in regard to such funds. A depositary of trust funds, whether a corporation or an individual, may not divert such funds from the beneficiaries for private debts, or otherwise, and the beneficiaries could no doubt compel such trustee to preserve such funds for their benefit. The law in respect to the duties of trustees in regard to trust funds committed to them, is so well understood, no discussion of that branch of the law is deemed necessary. It is proper, however, to bear constantly in mind the fact the depositary or trustee in this instance is a banking corporation, and that the trust funds were placed in its custody for the purpose of being checked out by the depositor for the use of the beneficiaries entitled to the same. The law on

this branch of the case is well expressed in the opinion of the court in *National Bank* v. *Insurance Co.* 104 U. S. 54, where it is said: "A bank account, it is true, even when it is a trust fund, and designated as such by being kept in the name of the depositor as *trustee,* differs from other trust funds which are permanently invested for the sake of being held as such, for a bank account is made to be checked against, and represents a series of current transactions. The contract between the bank and the depositor is, that the former will pay according to the checks of the latter, and when drawn in proper form the bank is bound to presume that the trustee is in the course of lawfully performing his duty, and to honor them accordingly." Certainly a bank may properly make payments on checks of the person whose deposits it holds, until notice of some adverse claim,—otherwise there would be no safety for corporations transacting a banking business with its customers. Applying these familiar principles, which accord with the common understanding of the manner in which banking business is usually transacted, the case in hand will present no serious difficulty.

It will be seen the account was kept by the bank in exact conformity with the act of Congress, section 995, *ut supra,*— that is, it was kept as a unit in the name of the court, requiring funds coming under its control to be deposited. No one can insist, with any show of reason, that this section of the United States statutes made it the duty of the court to cause its depositary to keep a separate account with each case pending or that had been adjusted, from which the deposits may have been received by the court or its officer. That is the appropriate work of the officers of the court, under its direct supervision. All the statute requires of the depositary is, that it safely keep all trust funds intrusted to its custody by the court or its officers, and pay out the same on the checks or order of the court, through its proper officers. Further than that the statute imposes no duty or obligation upon these

designated depositaries of the funds being administered under the direction of the United States courts. Nor is it correct to say that rule 28 in bankruptcy has enlarged the duties imposed by the act of Congress upon the depositary in this case, or placed it under different or other obligations in respect to the keeping of the account of funds intrusted to it by the court under whose appointment it was acting. This rule was no doubt adopted with the view to point out more specifically the duties of certain officers of the court in respect to funds belonging to or in the custody of the court; but when subjected to a close study, it will be seen it adds nothing of any value to the statute on the same subject.

As has been seen, the act of Congress requires that all moneys paid into any court of the United States, or received by the officers thereof, to be forthwith deposited in a designated depository of the United States, "in the name and to the credit of the court." Rule 28 requires the same thing in regard to such funds, and nothing more. The insistence in argument seems to be, the phrase in rule 28 that "every assignee, and the clerk of said court, shall deposit all sums received by them severally, on account of any bankrupt's estate, in one designated depository," requires that the account in the bank should be kept with each bankrupt estate, and not as a unit with the court. This does not seem to be a correct reading of the rule. It might be suggested the word "severally," as used in that connection, is not happily selected. Its meaning, as usually defined, is "distinctly," "separately," "apart from others." Understanding the word *severally* in either sense, how are assignees and clerks to make deposits of funds coming to them in their official capacity? Obviously, it was to be done "separately" and "apart from others." What the rule really means is, that "every assignee, and the clerk," shall deposit all sums received by them, respectively, on account of any bankrupt's estate, in one designated depository. That is its plain meaning, and nothing more. It will be noted, also,

that rule 28 directs how and in what manner such trust funds may be withdrawn from such designated depositories. In that respect, while it is a little fuller, perhaps, it follows closely section 996 of the Revised Statutes of the United States on the same subject, but makes no material change in the mode or manner of withdrawing such funds.

Holding, then, as this court does, that the account was properly kept as a unit with and in the name of the "District Court of the United States for the Southern District of Illinois," in conformity with the act of Congress and rule 28 in bankruptcy, and that it was properly withdrawn on checks drawn as directed by the statute, and the same rule, for the benefit of beneficiaries entitled to share in the common funds, there was no misappropriation of such funds by the bank, and there is and can be no liability upon the bank for any deficit in the amount due such beneficiaries, arising from the wrongful conduct of the former clerk in omitting to deposit all the trust funds that came to his hands as an officer of the court.

This view would seem to be conclusive of the whole case, and to render further discussion unnecessary; but as great stress is laid on the fact certain memoranda appear on the face of all checks drawn against the funds in the hands of the bank, that phase of the case will briefly be remarked upon. Over the check was written or printed: "In the District Court of the United States for the Southern District of Illinois," "Check number 53," "Case No. 2105," "In the matter of H. Sanford & Company, Bankrupts." In the body of the check it is said, the sum directed to be paid to plaintiff "being in full for the dividend of seven-tenths per cent declared April 30, 1881, on his claim for $31,380 proved against said bankrupt's estate." No doubt the check was drawn in this form for the reason the statute requires that "every such order shall state the cause in or on account of which it is drawn." Rule 28 in substance requires the same thing. It can not be known certainly why it was made necessary every such order should

contain these things or this particular information. Many reasons might be suggested why it should be so. First, it was an assurance from the court to the bank that the trust funds· in its custody were being withdrawn for the use of beneficiaries, and were therefore not being misappropriated; second, it might· be of advantage to the court and its officers in making up the accounts with each estate in bankruptcy pending or that had been adjudicated in the court; and third, it would be a con-venient mode of obtaining vouchers from the parties receiving dividends, that would operate as a protection to the officers· making such payments. What reason may have existed for so providing by statute and by rule, matters little. It is only important it is declared the check or order for withdrawing such fund shall contain the things enumerated. Without look--ing for a reason why it is so, the only concern is what such memoranda indicated, or what obligation, if any, there was· thereby imposed upon the bank. Beyond what has already been said, that it was an assurance from the court itself, the funds were being withdrawn for a legitimate purpose, it is not· perceived the memoranda, either on the margin or in the body of the check, contained anything for the guidance or informa-tion of the bank in any manner whatever, nor was the bank under any legal duty to observe such memoranda. The bank could not know, nor was it important it should know, that· "H. Sanford & Company" were the bankrupts whose estate was being administered in "case No. 2105," nor that the payee· of the check was a creditor of such bankrupts, nor that the· sum ordered to be paid him was in full of a dividend declared at a certain date, and was a certain per cent of his claim allowed against the estate of such bankrupts. These were matters exclusively within the knowledge of the court and its officers, and with which the bank had no rightful authority to intermeddle. It is well known, and the testimony is full to that point, the practice among banks paying checks of their depositors is not to observe memoranda upon such checks,

but the custom is to regard them as having been made for the convenience of the drawers, and the practice in that regard, it is thought, has the sanction of law in its support.

The judgments of the Appellate and circuit courts will be reversed, and the cause remanded to the circuit court.

*Judgment reversed.*