(No. 19074.—

THE MASSACHUSETTS BONDING AND INSURANCE COMPANY, Defendant in Error, *vs.* THE STANDARD TRUST AND SAVINGS BANK, Plaintiff in Error.

*Opinion filed April 20, 1929.*

Dunn, J., dissenting.
DeYoung, C. J., took no part.

Castle, Williams, Long & Castle, (Jesse R. Long, and Hargrave A. Long, of counsel,) for plaintiff in error.

Moses, Kennedy, Stein & Bachrach, (Walter Bachrach, and Isaac E. Ferguson, of counsel,) for defendant in error.

Mr. JUSTICE STONE delivered the opinion of the court:

Defendant in error filed in the circuit court of Cook county a bill for accounting against plaintiff in error and for a decree for the payment of such amount as might be found to be due. The allegations of the bill are as follows: Frank T. Joyner was appointed receiver of the Midland Casualty Company by the circuit court of Cook county on May 19, 1917. At different times thereafter he gave bond as required by the court, with defendant in error as surety. As such receiver he opened an account with plaintiff in error and from time to time deposited in this account funds coming into his hands as such receiver. Thereafter Joyner defaulted in his accounts as receiver to the amount of $33,286.84 and absconded and his whereabouts are unknown. He was removed as receiver and the Chicago Title and Trust Company appointed in his stead. In compliance with an order of the court defendant in error paid the amount of Joyner's defalcations and by decree of that court was subrogated to the rights of the Chicago Title and Trust Company as successor to the receiver. The theory of the bill to establish the liability of plaintiff in error is that Joyner drew checks against his account in favor of the bank in payment of his personal obligations to it, and for his own personal use, which the bank paid with knowledge of such facts. Plaintiff in error answered denying the equities of the bill, and the cause being at issue was thereafter referred to a master to "take the testimony herein according to law on the question of the liability, if any, of the defendant herein, and that said master file his report herein covering the testimony, together with his conclusions of fact and law on said question, and thereafter await the further order of court." The master reported his findings at length as to the transactions on which the bill was based but found that complainant failed to prove the material

allegations of its bill by a preponderance of the evidence and that defendant was therefore not liable. The chancellor sustained certain exceptions to the master's report and found plaintiff in error liable. Thereupon plaintiff in error entered its motion for a re-reference to take the accounting. This motion was overruled, the chancellor being of the opinion that a re-reference would be useless in view of the fact that the testimony had been fully taken. A decree was entered which in part sustained and in part overruled the exceptions and found a liability against the bank in the amount of $21,618.35, for which sum a decree was entered. Plaintiff in error perfected its appeal to the Appellate Court. That court affirmed the decree and this court allowed a writ of *certiorari*.

Plaintiff in error contends that the decree is against the weight of the evidence and the law governing the cause; that the court erred in denying a motion of plaintiff in error for a re-reference of the cause after the entry of the decree herein, and in decreeing that plaintiff in error is liable for interest from the date of the several misappropriations found to have been made by the receiver.

It is admitted that the account opened by Joyner on June 19, 1917, was of the moneys belonging to the Midland Casualty Company and that plaintiff in error knew that the deposit was a trust account. The rule in this State governing the relationship of a depository to a trust account was announced in *State Nat. Bank* v. *Reilly*, 124 Ill. 464, and is, that a depository of trust funds may not divert such funds from the beneficiaries for private debts or otherwise. The contract between the bank and the trustee depositor relating to such trust fund is, that the former will pay according to the checks of the latter when drawn in proper form, and in so doing the bank is bound to presume, in the absence of knowledge on its part to the contrary, that the trustee is lawfully performing his duty in drawing

checks against the fund, and the bank is required to honor them accordingly. A bank may properly make payments on the checks of a trustee depositor whose deposit it holds until notice of some adverse claim. If the bank is affected with knowledge of the unlawful character of the appropriation it will be required to refund. (*Fifth Nat. Bank* v. *Village of Hyde Park*, 101 Ill. 595; Morse on Banks and Banking, p. 37.) Guided by these rules we come to the consideration of the various items which make up the claim of liability against plaintiff in error. As that question is affected by the circumstances surrounding the various checks, which circumstances differ as to many of them, the checks in question are hereinafter considered in groups, according to the facts pertaining to each group.

We first consider the checks signed by Joyner individually and not as receiver, on which the chancellor held plaintiff in error liable.

On December 12, 1917, Joyner drew a check for $15 payable to Cleland, Lee & Phelps. This check was presented to plaintiff in error, paid December 18, 1917, and charged to the receivership account. The testimony shows that said check was given in payment of services rendered by said firm in a matter foreign to the receivership. On December 31, 1917, plaintiff in error paid a check drawn by Joyner for $100 payable to T. J. Hurley. The evidence shows that on presentation of said check, Joyner not having a personal checking account with the bank, the paying teller to whom it was presented took the check to James M. Miles, then vice-president of plaintiff in error, and the latter wrote "Rec." after Joyner's name and placed his initials, "J. M.," thereon. The check was charged to the receivership account. The evidence shows that Hurley was a partner of Joyner and others in soliciting orders for portraits. On February 4, 1918, plaintiff in error paid a check drawn by Joyner for $6.87 on February 1, 1918, payable to W. K. Cannady, cashier, and charged the same to the

receivership account. On February 4, 1918, plaintiff in error paid a check drawn by Joyner on January 30, 1918, for $95.50, payable to O. M. Karraker, president of the First National Bank of Harrisburg, Illinois, and charged the same to the receivership account. On May 12, 1919, plaintiff in error paid a check drawn by Joyner for $2000 payable to W. H. Colvin & Co. The evidence shows that before payment was made thereon it was presented to plaintiff in error's then vice-president, Miles, who testified that he called Joyner on the telephone and asked him about this check, and that Joyner said he intended it as a receivership check, and he, Miles, thereupon placed thereon his initials, "J. M.," and that someone in the bank wrote "Rec." in pencil under the name of Joyner and the same was charged to the receivership account. There is no evidence in the record of any direction or authority by Joyner to the bank or any other person to write the word "Receiver" after his name. Miles testified that he knew Joyner was dealing through Colvin & Co. in stocks and bonds on his own account. On July 11, 1918, plaintiff in error's then vice-president, Miles, signed Joyner's name as receiver to a check for $1500. This check was cashed, charged to the receivership account and the amount placed to the credit of Joyner's individual account. The evidence shows that Miles received a telephone call from Joyner saying he had given a check for $1500 to Colvin & Co. and was going to Green Bay and requested that $1500 be transferred to his personal account. On January 2, 1918, plaintiff in error paid a check drawn by Joyner for $11 payable to the Union League Club and charged the same to the receivership account. The record shows that up to December 18, 1917, the date when the first of the checks signed by Joyner individually was presented for payment, all checks had been signed by Joyner as receiver. The checks mentioned were not so drawn. They were not orders or directions to plaintiff in error to pay the same out of the trust funds but

were drawn against Joyner individually. The $1500 transaction was a transfer to Joyner personally, for which he later gave his check. Each check above referred to was an improper voucher and afforded no justification to the bank to pay the same out of the trust fund.

Plaintiff in error argues that as Joyner had no other account in the bank it is evident that the failure to write the word "Receiver" after his name was but an inadvertence on his part, and that he intended to sign all of said checks as receiver for the reason he told Miles the $2000 check to Colvin & Co. was intended as a receivership check, and also because he received his canceled checks each month and ratified plaintiff in error's action by not making any complaint. We cannot agree with this line of reasoning. Plaintiff in error admits that the bank had no right to honor checks payable to third parties when it knew the same were misappropriations of such funds. Miles testified that the Colvin & Co. check was called to his attention. He knew that Colvin & Co. had no dealings with the Midland Casualty Company. He also knew that Joyner was dealing with Colvin & Co. on his own account. His testimony indicates that he knew that the purpose of this check was not a receivership purpose. This knowledge is chargeable to plaintiff in error and its duty was to refuse payment, and not having done so it is right to compel it to refund. (*Fifth Nat. Bank* v. *Village of Hyde Park, supra;* Morse on Banks and Banking, *supra.*) Its only authority to pay money out of the receivership fund was on checks drawn by Joyner as receiver, and they were not so drawn. The transaction indicated that the checks were not for trust fund purposes, and plaintiff in error under such circumstances should either have charged them to Joyner's private account or refused to pay them. (*Jaudon* v. *City Bank,* 8 Blatchf. 430.) Joyner's acquiescence in such payment clearly can afford the bank no defense against the beneficiaries of the trust. It was not error to charge said amounts to plaintiff in error.

We will next consider the checks properly drawn by Joyner as receiver but on which plaintiff in error is said to have benefited by reason of their payment.

On December 7, 1917, plaintiff in error's discount teller accepted Joyner's check as receiver for $54, payable to the bank. The record does not show by whom it was presented or whether cash was paid thereon. The bank records in evidence show that it was charged to the trust account, and on that day a credit of $54 was endorsed as a payment on a note signed by W. E. and Eva B. Joyner for $204 and which had been endorsed by Frank T. Joyner. This was Joyner's liability, and the transaction indicated that the check was not for trust fund purposes but for the purpose of making payment to the bank.

On July 3, 1918, Joyner as receiver issued a check for $3500 payable to himself and endorsed the same. This check was charged to the trust account. The record shows that on June 29, 1918, Joyner borrowed from plaintiff in error that sum and it was credited to the trust account. This loan was evidenced by Joyner's individual note. Miles testified that Joyner applied to him, as a vice-president of the bank, for a temporary loan of $3500, as he without a court order had taken that amount from the trust fund, due him as fees, and he desired to replace the same. The loan was made to Joyner personally, the amount credited to the trust account, and the receiver's check of July 3, 1918, was in payment of that loan. Here, again, plaintiff in error had knowledge, from the character of the transaction, that the receiver's check issued by Joyner on July 3 was diverting the trust fund to the payment of his individual debt, and by such payment plaintiff in error was benefited.

On November 18, 1919, Joyner was indebted to plaintiff in error on two past-due notes, aggregating $3950. Its note record shows that on that date its discount teller accepted two checks drawn by the receiver on his trust account, for $2975 and $975, respectively, and credited the

same on the individual notes of Joyner. On December 8, 1919, the president of plaintiff in error required Joyner to restore the amount to the trust account, which he did by a deposit of that amount. On the same day Joyner as receiver drew two currency checks, for $2975 and $975, respectively, and endorsed both individually, and said amounts were paid and charged to the trust account. Plaintiff in error insists there is no proof that the $3950 withdrawn was the same $3950 deposited to the credit of the trust account on that day. The evidence is that Miles, who is a nephew of Joyner, knew Joyner's financial standing and that he had no other business than this trusteeship, and we are of the opinion that the deposit having been made on the same day that the two currency checks were drawn and charged to the trust account, and the undoubted knowledge of the bank that the deposit made on that day was to replace the amount received on Joyner's personal debt to the bank out of trust money, the whole transaction, of which the bank had knowledge, indicated that Joyner was paying his debts with trust funds.

The settled rule is, that if a depositor seeks to pay his own debt to the bank by an appropriation of the funds to his credit in a fiduciary capacity, the bank is affected with knowledge of the unlawful character of the appropriation and will be compelled to refund. (*Fifth Nat. Bank* v. *Village of Hyde Park, supra;* Morse on Banks and Banking, *supra.*) The reason for the rule is that the bank has knowledge that the check is in payment of the trustee's private debt. The bank officials may be said to have knowledge of the character of a transaction when a reasonably intelligent person would have such knowledge. It makes no difference how plaintiff in error obtained that knowledge if the evidence shows, as in this case, that the checks were an unlawful appropriation of the trust funds. When plaintiff in error permitted checks to be drawn on that account payable to itself and applied the same in payment of Joyner's

indebtedness due it, it was participating in and aiding Joyner in committing a breach of trust and was responsible therefor. *State Nat. Bank* v. *Reilly, supra;* 2 Pomeroy's Eq. Jur. sec. 1079; *Duckett* v. *National Mechanics Bank,* 86 Md. 400, 38 Atl. 983; *Allen* v. *Puritan Trust Co.* 211 Mass. 409, 97 N. E. 916; *Munnerlyn* v. *Bank,* 88 Ga. 333, 14 S. E. 554; *Board of Chosen Freeholders* v. *Newark City Bank,* 48 N. J. Eq. 51, 21 Atl. 185; 1 Morse on Banks and Banking, sec. 317; *Swift* v. *Williams,* 68 Md. 237, 11 Atl. 835.

We will next consider the checks in which the bank is said to have assisted Joyner in the misappropriation of the trust fund.

On December 10, 1918, Joyner as receiver issued a check for $221.75 payable to cashier's checks and charged the same to the trust account. For this check plaintiff in error issued five drafts payable to Joyner individually, in the sums of $52.50, $53.64, $72.50, $4 and $39.11. Plaintiff in error insists there is no proof that this was a misappropriation, as the record is silent as to what use Joyner made of the drafts. Had plaintiff in error issued these drafts payable to Joyner as receiver, as it should have done, there could be no question about them. The check was an order regularly drawn by the receiver, directing the bank to issue cashier's checks. Joyner's direction that the cashier's checks be issued to him personally was a fact which on its face indicated his personal use of them. While, as hereinbefore held, the depository bank is not required to know the use to which the trustee is putting the funds, yet where the transaction indicates that the use is personal to the trustee the depository may not be protected if it, notwithstanding such indication, assists the trustee in misappropriating the fund. The depository has a right to presume that the trustee will make legal use of the funds, (*State Nat. Bank* v. *Reilly, supra,*) but where the transaction itself indicates that the use is a personal one the

depository should no longer indulge such presumption as to that transaction. The transaction then becomes one where the facts indicate to the depository that a different use of the funds is to be made. In this transaction plaintiff in error, by issuing the checks to Joyner individually, assisted and participated, whether intentionally or negligently, in the diversion of the funds by the receiver.

On May 28, 1917, Joyner as receiver issued a check payable to plaintiff in error for $208.31. The bank records show that this check was issued in payment of a sight draft drawn by the First National Bank of Harrisburg, Illinois, on F. T. Joyner personally, in the sum of $207.68, plus ten cents exchange and fifty-three cents expense, the total aggregating the amount of the check. Plaintiff in error insists that it was bound to presume, under the law, that this was a proper receivership transaction. The sight draft was not drawn upon Joyner as receiver but upon him individually. It was sent to plaintiff in error for collection. The fact that it was drawn against Joyner personally was known to plaintiff in error. The payment by receiver's check was made to plaintiff in error. The transaction indicated that it was the personal debt of Joyner, yet with these facts in its possession plaintiff in error accepted such payment, apparently without any question. Such is not a case where the depository is entitled to presume that the use of the trust fund was a proper use. To do so would be to indulge a presumption, contrary to facts within the knowledge of the depository, indicating a wrongful use of the funds.

The circuit court also charged against plaintiff in error two checks, amounting to $600, signed by Joyner as receiver, made payable to Joyner's order individually and so endorsed by him; also fourteen checks signed by Joyner as receiver, made payable to cash or currency and bearing no endorsement, amounting to $465.50. All of the checks in this group were evidently paid over the counter of plaintiff in error, as they bear either Joyner's personal endorse-

ment or no endorsement. They constituted payment of the trust funds to Joyner not as trustee, for they were not so endorsed, but to him personally. These transactions in themselves, therefore, indicated that trust funds were being used by Joyner for his personal use. They were paid to Joyner individually. Plaintiff in error knew the checks were drawn on trust funds and made payable to Joyner himself. It was not justified in presuming that Joyner's use of the funds would be for trust purposes, for the facts indicated the contrary. It was therefore bound by any information which it could have obtained had it pursued inquiry as to the use to which said withdrawals were to be put, until the truth had been ascertained. (*Allen* v. *Puritan Trust Co. supra; Duckett* v. *National Mechanics Bank, supra;* 2 Pomeroy's Eq. Jur. sec. 1079; *Shaw* v. *Spencer,* 100 Mass. 382; *Loring* v. *Brodie,* 134 id. 453.) The chancellor did not err in holding plaintiff in error liable on these checks, aggregating $1065.50.

We will next consider a group of checks drawn to cash or currency, signed by Joyner as receiver and endorsed by other parties, and also checks so signed and issued to miscellaneous payees.

There were eight checks of $5 each drawn to cash or currency, one containing the endorsement of Joyner individually and also another endorser, and the balance endorsed by others, aggregating $40. There were also in this group thirty-four checks endorsed by the Union League Club of Chicago, either as payee or endorser, amounting to $339.70; also twenty-seven checks made to miscellaneous payees, amounting to $2120.02. The total of these sixty-nine checks is $2499.72. There is nothing in these transactions or in the record to indicate that plaintiff in error had any knowledge that these checks were not being used for receivership purposes. Trust accounts as kept in a bank are of two kinds: one where the trust fund is permanently invested with the bank to be held as such, and

the other a deposit by a trustee of trust funds to be checked against by such trustee. The latter represents a series of current transactions and is a contract between the bank and the depositor that the bank will pay according to checks of the trustee drawn in proper form, and when so drawn the bank is to presume, in the absence of facts within its knowledge indicating the contrary, that the trustee is lawfully performing his duty, and it is the duty of the bank to honor such checks accordingly. (*State Nat. Bank* v. *Reilly, supra; National Bank* v. *Insurance Co.* 104 U. S. 54.) The checks in the last mentioned group were all properly drawn and signed as receiver, either payable to third parties or endorsed by them, and presented for payment either directly to the bank or through the clearing house. There is no evidence that plaintiff in error had any notice that any of such checks were not in payment of proper trust indebtedness.

Defendant in error endeavors to invoke a rule to the effect that when a bank has knowledge that the receiver has misused trust funds in payment of his own debts or otherwise, such knowledge is sufficient to require the bank to investigate all checks drawn, and if they are, in fact, improper vouchers and were issued in payment of the receiver's personal obligations, the bank is liable, relying upon *Bischoff* v. *Yorkville Bank,* 218 N. Y. 106, 112 N. E. 759. In that case all the checks on which the bank was held liable were checks drawn by an executor, payable to the bank in payment of the executor's individual indebtedness to the bank. It was said in that case: "We do not consider the question, because it is not here, as to whether or not a bank would be protected in honoring a check of a fiduciary depositor, regularly drawn upon his account as such fiduciary and presented by him, even though it had actual notice that he would misappropriate the proceeds." That case does not support defendant in error's contention as to this last mentioned group of checks. A bank may properly make payments on checks properly drawn unless the bank has

some notice of an adverse claim or that the same are improperly drawn or in payment of the receiver's personal indebtedness, otherwise there would be no safety for a bank receiving deposits of trust funds to be paid out on a checking account. The enforcement of the rule insisted upon by defendant in error would make it practically impossible for fiduciaries to find a bank which would handle trust business of such character. (*State Nat. Bank* v. *Reilly, supra; Fifth Nat. Bank* v. *Village of Hyde Park, supra.*) There is no evidence in the record to charge plaintiff in error with notice that any of the checks last listed were drawn in payment of Joyner's personal obligations or for his own use. The law does not require a bank, under such facts, to assume the hazard of correctly reading in each check the purpose of the drawer, or, being ignorant of the purpose, to dishonor the check. (*Bischoff* v. *Yorkville Bank, supra.*) It is not claimed that plaintiff in error had any interest in or derived any benefit from said checks. They were in the hands of third parties, who presented them for payment. Under these circumstances plaintiff in error had no right to refuse payment, for if it did so it would be making itself a party to an inquiry as between its customer and a third party. It would be setting up a *jus tertii* as a reason why it should not perform its own distinct obligation to its customer. (*National Bank* v. *Claxton,* 97 Tex. 569, 80 S. W. 604; *United States Fidelity and Guaranty Co.* v. *Adoue & Lobit,* 138 S. W. 383; *Coleman* v. *Bank,* 94 Tex. 607, 63 S. W. 867; *Gray* v. *Johnson,* L. R. 3 Eng. & Ir. App. Cas. 1.) We are of the opinion that the chancellor erred in decreeing plaintiff in error liable for payment of the group of checks last considered, aggregating $2499.72.

It is next contended that the court erred in allowing interest on the various items from the respective dates of withdrawal from the trust fund. Defendant in error contends that, it being the duty of plaintiff in error to return the various items to the trust fund, it was proper to charge

interest from the dates of withdrawal, and it cites numerous cases in support of that contention. This case, however, stands on a different footing from the cases cited by defendant in error, in this: the sum paid by it was the judgment rendered against Joyner, the receiver. The rights of the beneficiary in the receivership fund, which became the rights of the new receiver when it was appointed, are represented by the judgment against Joyner. When defendant in error paid that judgment it was subrogated to the rights of the receiver and was entitled to recover from the bank the items entering into the judgment against Joyner for which the bank was liable. Whether interest was computed in the judgment against Joyner does not appear from the record. If it was not computed, the surety, who was merely making good Joyner's defalcations as represented by the judgment against him, would not be entitled to interest on the various items misappropriated, from the date of their withdrawal. If such interest did enter into and become a part of the judgment against Joyner, defendant in error, if it desired to have the benefit of such interest, should have made proof of that fact. Not having done so it is not entitled thereto. It being the duty of plaintiff in error to contribute to the payment of the judgment against Joyner to the extent of those items for which this court has found it liable, the surety, which paid the judgment against Joyner, cannot be said, on this record, to be entitled to interest from any date prior to the date of that judgment. That it is entitled to interest from the date of the judgment against Joyner seems clear. The circuit court erred in computing interest at an earlier date.

It is also urged that the chancellor erred in denying the motion of plaintiff in error for a re-reference of the cause to the master. The original reference to the master was to take the testimony on the question of liability, if any, of plaintiff in error, and that he file his report covering the testimony, together with his conclusions of fact and law on

said question and thereafter await the further order of the court. There is no contention that the master went beyond the scope of the court's order. It is apparent from an examination of the record that the master heard all the testimony submitted by both parties on 154 items, constituting the entire claim of defendant in error against plaintiff in error. He reported his conclusions of fact on each of the items claimed. There is nothing in the record to indicate an offer on the part of plaintiff in error of additional testimony either before the master or at the time of the making of the motion for re-reference, some two years later. The purpose of the bill was for an accounting on the various items of claim set up therein. There is no cross-bill. An accounting was therefore the only question before the master. While the master found there was no liability on the part of plaintiff in error, that finding was made on consideration of the various items of the claim. The case was fully tried, or at least an opportunity was given to both sides to try it in full, and, so far as the record shows, each side availed itself of that opportunity. The chancellor did not err in refusing an order of re-reference.

For the reasons herein indicated the decree is reversed and the cause is remanded, with directions to the circuit court to enter a decree for the various items on which this opinion finds liability on the part of plaintiff in error and to include therein interest at the legal rate on said sums from the date of the judgment against Joyner.

*Reversed and remanded, with directions.*

Mr. JUSTICE DUNN, dissenting.

Mr. CHIEF JUSTICE DEYOUNG took no part in this decision.