Oscar L. Mann et al., Appellants, v. John F. Hahn and Commercial Trust and Savings Bank of Evanston. Commercial Trust and Savings Bank of Evanston, Appellee.

**Gen. No. 39,586.**

Opinion

filed November 8, 1937.

Green & Costigan and Kosdon & Kosdon, both of Chicago, for appellants; William C. Wines, of Chicago, of counsel.

Shanesy & Hobbs, of Evanston, for appellee; Ralph D. Shanesy, Walter B. Hobbs and Harry P. Pearson, all of Chicago, of counsel.

Mr. Presiding Justice O'Connor delivered the opinion of the court.

Plaintiffs filed their amended complaint in chancery praying that defendants account for the proceeds of a check for $5,000, together with any increment thereof. Defendant bank filed its answer, denying liability, the cause was referred to a master to take the testimony and to report his findings of fact. He took the evidence and made findings of fact but no recommendation. No objections were filed to his report. A decree was entered finding the equities in favor of the defendant bank, the suit was dismissed as to it and plaintiffs appeal. Defendant Hahn testified in the case but was not served with process; he entered no appearance and the court expressly found that no disposition was made of any claim plaintiffs might have against him.

The record discloses that plaintiff Oscar L. Mann and defendant John F. Hahn were friends of many years standing; Hahn had attended to a number of business matters for Mann; on September 24, 1929, the parties entered into a written trust agreement whereby plaintiff Oscar L. Mann was to turn over and deliver to Hahn $5,000 in trust. Hahn was given broad power to invest the money in first mortgages, first mortgage bonds secured by mortgage on improved or unimproved real estate, or any stocks or mortgage bonds of any corporation in the United States, with power to vary the investment, and was empowered to deal with the $5,000 or any stocks or bonds as in Hahn's discre-

tion might seem advisable; and provision was made for the distribution of principal and interest of the fund.

October 4, 1929, the Chicago Title and Trust Company at Mann's request drew its check for $5,000 to the order of Hahn as trustee and delivered it to Hahn; this was the $5,000 mentioned in the trust agreement. The next day Hahn as trustee indorsed the check and delivered it to Emil R. Zilman, cashier and treasurer of John F. Hahn, Inc., which company did a large volume of real estate business, and on the same day, October 5, 1929, John F. Hahn, Inc., indorsed the check and deposited it in its account with defendant Commercial Trust & Savings Bank of Evanston. Hahn did not invest the $5,000 in any securities, as required by the terms of the trust agreement, but the money was checked out of the bank by John F. Hahn, Inc., in the regular course of its business.

In April, 1933, Hahn advised plaintiff Oscar L. Mann that he had not invested the $5,000, but that it had been deposited and the proceeds used as above stated. He then agreed that he would repay Mann the money and thereafter, from time to time, made payments, usually 10 or 15 dollars, in some instances larger amounts, aggregating $3,604.25.

A receipt was attached to and a part of the check for $5,000 and was signed by John F. Hahn, trustee, acknowledging receipt of the $5,000. It also contained the following: "Payment as directed to create a trust fund for the benefit of Oscar L. Mann, Lucinda Mann and Horace Hayden Mann." The evidence further shows, and the decree found, that John F. Hahn was president of John F. Hahn, Inc., and was the owner of 90 per cent of the stock of that corporation, which was engaged in the real estate and mortgage business in Evanston; that defendant Commercial Trust & Savings Bank of Evanston was a banking corporation doing business in Evanston, and that John F. Hahn

was a director and its president. John F. Hahn, Inc., had one or more accounts with defendant bank and did a large volume of business with it. When Hahn handed the $5,000 check in question to Zilman, as above stated, an account was opened in the books of the John F. Hahn, Inc., in the name of "Oscar L. Mann Trust Account," which showed the receipt of the $5,000. The check was then indorsed and appears as one of the items of deposit made on that day in the bank.

October 5, 1929, John F. Hahn, Inc., made two deposits in defendant bank, one consisting of three items totaling $25,548.67; one of the items was the $5,000. The other deposit consisted of 18 items aggregating $55,108.30. The check which was drawn on the First National Bank of Chicago was paid in the regular course to defendant bank.

The decree further finds that neither Hahn nor John F. Hahn, Inc., ever purchased any mortgage or other security with the $5,000. Thereafter Hahn, Inc., went into bankruptcy and John F. Hahn as trustee filed a claim in the bankruptcy court for the $5,000. It was stipulated between the parties that Lucinda Mann first learned of the deposit of the check with defendant bank in January or February, 1936, and that Horace H. Mann was not informed of the facts prior to January 1, 1936. The decree further found that Hahn made payments to plaintiffs Oscar and Horace Mann at various times, and that such payments were received by them, "with the understanding that the payments were on account of the trust."

Counsel for plaintiffs say in their brief, "The evidence taken by the master was not conflicting in any particular; and, his findings of fact being satisfactory to all the parties, and there being no conclusions of law, no objections were filed or exceptions taken to his report"; and that the record "presents only the

question of the liability of the defendant bank, as a matter of law, upon such facts.''

The legal proposition advanced by counsel for plaintiffs, upon which the liability of the bank is predicated, is that the bank was admonished by the terms of the check that it represented trust funds, and any disposition of the check or its proceeds indicating that the fund was being diverted from the trust, entails upon the depositary bank the duty of inquiring whether such disposition was a misapplication of the trust fund, ''and unless such inquiry is pursued, the depositary is liable as a participant in the conversion of the trust funds.'' And the cases of *Massachusetts Bonding & Indemnity Co. v. Standard Bank,* 334 Ill. 494, *Haase v. Denisch,* 268 Ill. App. 281, and other authorities are cited. And counsel contend that defendant bank was informed by the text of the check that the $5,000 was a trust fund because it was payable to ''John F. Hahn, as Trustee'' and also bore upon the face of the receipt attached to the check the following, ''Payment as directed to create a trust fund for the benefit of Oscar L. Mann, Lucinda Mann and Horace Hayden Mann''; that the bank knew that Hahn was the president and a stockholder of John F. Hahn, Inc., and that these facts were sufficient to apprise defendant bank when the check was deposited that the trust funds were being diverted.

The *Massachusetts Bonding Company* case (334 Ill. 494) was a bill for an accounting brought against the Standard Bank for wrongfully paying checks drawn by Frank T. Joyner, as receiver, he having been appointed by the circuit court of Cook county. The court classifies the checks under four heads: (1) checks signed by Joyner individually and not as receiver; (2) checks drawn by Joyner as receiver but in which the bank was said to have benefited by reason of their payment; (3) checks in which the bank is said to have

assisted Joyner in the misappropriation of the trust. fund. The checks classified in the third group were checks drawn by Joyner as receiver for which he received drafts payable to himself individually and some other checks which show that the fund was to be used for his personal use. In each of the three classes the bank was held liable. The fourth group of checks was signed by Joyner as receiver and payable to cash or currency, and also checks signed or issued to miscellaneous payees. These checks bore indorsements, some of them by Joyner and other parties, some of them by other parties only, and the checks were paid to such other parties.

It was said that there "was nothing in these transactions or in the record to indicate that plaintiff in error [the defendant] had any knowledge that these checks were not being used for receivership purposes." In stating the rule of law on which a bank in such a situation is held, the court said (p. 502): "The settled rule is, that if a depositor seeks to pay his own debt to the bank by an appropriation of the funds to his credit in a fiduciary capacity, the bank is affected with knowledge of the unlawful character of the appropriation and will be compelled to refund. . . . The reason for the rule is that the bank has knowledge that the check is in payment of the trustee's private debt. The bank officials may be said to have knowledge of the character of a transaction when a reasonably intelligent person would have such knowledge." And continuing the court said (pp. 503–4): "The depository has a right to presume that the trustee will make legal use of the funds, (*State Nat. Bank v. Reilly, supra,* [124 Ill. 464]) but where the transaction itself indicates that the use is a personal one the depository should no longer indulge such presumption as to that transaction." And the court further said (pp. 506–7): "A bank may properly make payments on checks

properly drawn unless the bank has some notice of an adverse claim or that the same are improperly drawn or in payment of the receiver's personal indebtedness, otherwise there would be no safety for a bank receiving deposits of trust funds to be paid out on a checking account. The enforcement of the rule insisted upon by defendant in error would make it practically impossible for fiduciaries to find a bank which would handle trust business of such character. . . . There is no evidence in the record to charge plaintiff in error with notice that any of the checks last listed [the fourth group] were drawn in payment of Joyner's personal obligations or for his own use. The law does not require a bank, under such facts, to assume the hazard of correctly reading in each check the purpose of the drawer, or, being ignorant of the purpose, to dishonor the check. . . . It is not claimed that plaintiff in error had any interest in or derived any benefit from said checks.'' And it was held that the bank was not liable for the checks mentioned in that group.

In the instant case the check was made payable to John F. Hahn, trustee. He indorsed it as such and delivered it to an employee of John F. Hahn, Inc., and the check was afterwards indorsed by that corporation and deposited in defendant bank for collection. The check was paid in the regular course of business by the bank on which it was drawn and the funds placed to the credit of John F. Hahn, Inc. Afterward the money was paid out on checks drawn against the account by John F. Hahn, Inc. In these circumstances we think it cannot be said the bank had any knowledge that the money was being wrongfully diverted.

Counsel for plaintiffs in their reply briefs say that they make no contention that the bank had any knowledge that the money was being diverted by reason of the fact that Hahn was president of the bank. In the instant case, if the defendant bank were held liable

under the facts disclosed, it would be "practically impossible for fiduciaries to find a bank which would handle trust business of such character."

In the *Danisch* case (268 Ill. App. 281) a cashier's check was made payable to Danisch as trustee for certain named persons. The trustee indorsed the check as such and then indorsed it individually. He presented the check to the defendant bank which gave him $2,000 in cash and credited his individual account in the bank with the balance of the check, which was more than $7,000. He misapplied the $2,000. Subsequently the bank withdrew the fund from Danisch's private account to pay his obligation to the bank. It was clear the bank knew the trust funds were being diverted and being used for the personal benefit of Danisch. It is obvious the facts in that case are not substantially the same as the facts in the instant case. There the check showed the money was the property of the trustee but part of it was given to him individually and the balance deposited in his personal account. And it was held that the bank was liable. It was clear in that case that the bank knew he was taking the trust funds and using them for his own purpose.

In *Hood v. Kensington National Bank*, 230 Pa. 508, it was held the mere fact that a check is made payable to a person as guardian and indorsed as such, imposes no duty upon the bank, with whom the check was deposited for collection by one of its customers, to question the title of the depositor to the check. The court there said (p. 510): "The theory of the plaintiff seems to be that because a check came to the bank in the regular course of business, which was payable to a certain person as guardian, the bank was not at liberty to accept the check from anyone else, although regularly indorsed by the payee. This theory is far fetched, and is without any reasonable basis. The bank was under no duty to supervise the acts of Gigon as guard-

228

ian, nor was there anything in the transaction to be criticised in so far as the bank was concerned. . . . Whatever reason Gigon may have had for transacting the business in the precise manner in which he did it, was his own. The bank was not dealing with him in the matter but was concerned only with its own customer, the Hood Leather Company, which came to it with a check drawn upon a bank in another city and state, regularly indorsed, which it was requested to collect. There was nothing in the occurrence to arouse suspicion, or call for comment or question, upon the part of the defendant bank. If there was any misuse of the funds by the guardian, it was, so far as this record goes, something of which the defendant bank had no knowledge.'' We think the facts in that case are analogous to the facts in the case before us.

For the reasons stated the judgment of the circuit court of Cook county is affirmed.

*Judgment affirmed.*

McSURELY and MATCHETT, JJ., concur.